## TRIPPE, Ex'r, v. JOHN, Adm'r.

1. Where an antenuptial contract secures to a trustee, for the separate use of the wife, "all the property of every description, to which she is, or may be entitled by inheritance, or otherwise whatsoever," and the wife subsequently, by the death of an aunt and a sister, becomes entitled, as one of their distributees, to several slaves, which the husband receives the possession of, by virtue of a power of attorney from the trustee, and which, during his life, he acknowledges and recognizes as the separate property of the wife under the antenuptial contract, on the death of the husband, the right to such slaves does not vest in his personal representative, but survives to the wife.

2. Where a wife, having the power, under an antenuptial contract, to convey her separate property by deed, in consideration of a provision made for her in the will of her husband, executes to M. A. T. and W. F. T., his children by a former marriage, a deed of "all the property that she held in her separate right," and which concludes with a stipulation, "that said property is hereby fully and freely incorporated with his (her husband's) estate, and all manner of contracts, settlements or legal hindrances to the attainment of that end are hereby waived, I reserving the right, as a consideration herefor, to become an equal heir in the estate of my husband with his children, who are the parties to the second part in this deed"—Held, 1. That the deed creates no interest in the husband or his personal representattive, but vests the property in M. A. T. and W. F. T. the children of the husband. 2. That the deed is supported by a suffi-

cient consideration. 3. That the deed is not void for uncertainty in the description of the property. 4. That the delivery of the deed was a sufficient delivery of the property.

Error to the Circuit Court of Perry. Before the Hon. S. Chapman.

THIS was an action of detinue, brought by the plaintiff, as executor of Henry Trippe, deceased, against the defendant as administrator of Mary A. Trippe, deceased, to recover the possession of four slaves. By a bill of exceptions found in the record, it appears, that after the plaintiff had adduced proof tending to show the possession of the slaves in controversy, by said Henry, during his life time, and by the plaintiff as his executor, since his death, until dispossessed of them by defendant, the defendant introduced an antenuptial contract entered into between said Henry and Mary A., then Mary A. Harris, and Rowe Harris, the trustee therein, which provides, that "whereas, the said Mary is possessed, or entitled by inheritance, or otherwise, to certain property, consisting of lands, slaves, &c., and the said Henry having agreed, that if the said marriage shall take effect, then, notwithstanding the same, the said Henry, his executors, heirs, and assigns, shall not, and will not, have any right, or title to any part of the said property, to which said Mary is, or may be possessed of, or entitled to, in any wise or manner whatsoever, but the same shall remain and be the separate property and estate of her, the said Mary, now this indenture witnesseth, that for the purpose of making the said agreement effectual, and preserving the property to the said Mary, and for her separate use, so that the same shall not be in the power, or disposal of the said Henry, he, the said Henry, doth for himself, his executors and administrators, covenant to and with the said Rowe Harriss, &c., that notwithstanding the said intended marriage, all the estate and property of her, the said Mary, shall be recognized and taken as a distinct and separate estate, of and from the estate of him, the said Henry, and be no wise subject or liable for his contracts, or the payment of his debts, and the labour and increase that shall hereafter be gotten or gained from the said slaves, and

their increase shall be employed or disposed of in such manner, and for such purposes, as is hereinafter mentioned, to wit: that the increase of the female slaves shall be and remain the distinct and separate estate of the said Mary, and the labor and services of the said slaves shall be under the control and for the benefit of the said Henry, during the joint lives of them, the said Henry and the said Mary, and all the separate and distinct estate before described, or allotted to the said Mary, and the natural increase thereof, shall be had, taken, held or possessed from and after the decease, of him, the said Henry, or of the said Mary, in case she should die first, by such person or persons, and for such use or uses as she shall at any time or times hereafter, during her life, remit, order or dispose of the same, or any part thereof, either by her last will and testament, or by any writing whatever, signed with her hand in the presence of two or more witnesses, and that the said Henry, doth for himself, his heirs, executors and administrators, covenant to and with the said Rowe Harris in manner following, to wit: that he, the said Henry, will permit and suffer the said Mary to give, grant and dispose of her separate estate as she shall think fit, by will or otherwise, as above mentioned, &c. And the said Mary, in consideration of one dollar, to her in hand paid, and for the consideration and purposes before mentioned, doth hereby sell, transfer and convey, and confirm unto the said Rowe Harris, and his heirs and assigns, all the right, title, claim and interest of her, the said Mary, in and to the effects and property which she now is, or may hereafter become entitled to, from the estate of Henry Harris, deceased, and all property of every description which she is, or may be entitled to by inheritance or otherwise, whatever. In trust, nevertheless," &c. It also appears that Henry Trippe, whilst he had the possession of said slaves, admitted that he held them in right of his wife, as her separate estate, and not as his own property, and that the plaintiff also, whilst they were in his possession, recognized her right to them as her separate estate. It further appears, that a few hours before the death of said Henry Trippe, the said Mary A. executed a deed to Martha A. and William F. Trippe, children of the said Henry, by a former marriage, by which, in con-

sideration of the provision made for her in the will of said
Henry, made on the same day, she gave to them "all the
property that she held in her separate right," &c., and which
concludes with the following stipulation, "said property,
both real and personal, is hereby fully and freely incorporat-
ed with his (Henry Trippe's) estate, and all manner of con-
tracts, settlements or legal hindrances, to the attainment of
that end is hereby waived, I reserving the right, in conside-
ration hereof, to become an equal heir in the estate of my
husband, with his children, who are the parties to the second
part in this deed." On the day of the execution of this in-
strument, the said Henry made his will, and therein provided
for the said Mary A. equally with his said children, but his
estate has since been declared insolvent. Some of the slaves
sued for were received as the distributive share of said Mary
in the estates of Mrs. Dawson, her aunt, and Mrs. Creagh, her
sister, both of whom died, during the existence of the mar-
riage between the said Henry and Mary A.; those which came
from the estate of Mrs. D. were received by said Henry, un-
der a power of attorney from Rowe Harris, the trustee of
Mrs. Trippe, and those from the estate of Mrs. C. under a
power of attorney from the trustee of Mrs. C., authorizing
the said Henry to receive them from her administrator.

The court charged, the jury—1. That the antenuptial con-
tract vested a separate in the defendant's intestate, of all the
property she possessed at the time of the marriage; that if
the jury believed from the evidence, that it was the inten-
tion of the parties to include in it any property that Mrs.
Trippe might afterwards receive, then said property would
be in the same situation with that possessed by her at the
time of the marriage, and that in ascertaining that intention,
the jury could look to the acts and declarations of the par-
ties.

2. That the deed to Martha A. and William F. Trippe
was in accordance with, and a valid exercise of, the power
reserved to Mrs. Trippe in the antenuptial contract; that it
was a gift to the children of Henry Trippe, and not to Hen-
ry Trippe himself; and that the plaintiff, as the executor of
said Henry, has no right of action under it.

To which charges the plaintiff excepted, and now assigns them as error.

A. GRAHAM, of Perry, for plaintiff in error.
JOHN & BYRD, for defendant.

CHILTON, J.—This was an action of detinue, by the plaintiff in error, as executor of Henry Trippe, against the defendant, as administrator of Mary A. Trippe, to recover certain slaves, which the plaintiff insisted were the property of his testator.

The question of title mainly depends upon the construction of the documentary evidence offered upon the trial, and which is set out in a bill of exceptions, namely—1. An antenuptial agreement, entered into between the plaintiff's testator and the intestate of the defendant, before the solemnization of the rights of matrimony between them. 2. A subsequent deed by the wife, executed contemporaneously with the will of the husband, disposing of her interest in the property.

It is insisted by the plaintiff in error, that the antenuptial agreement only bound the property which Mrs. Trippe, then Miss Harris, had in her possession, and did not embrace the property which descended upon her from her aunt, Mrs. Dawson, and her sister, Mrs. Creagh, which was acquired subsequent to the execution thereof. This construction is not warranted by the terms of the agreement, which very explicitly provides, that her intended husband shall take no right or title to any part of the property of which she is, or *may be possessed, or entitled to in anywise or manner whatsoever.* And in another part of the same instrument, she conveys to the trustee, Rowe Harris, "all the right, title, claim, and interest of her, the said Mary A. Harris, in and to the effects and property to which she now is, or may hereafter become entitled from the estate of Henry Harris, deceased, and all property of every description to which she is, *or may be entitled by inheritance or otherwise whatever.*" It would be difficult to use language more explicit, and more appropriate to exclude the husband's representative from any participa-

tion in property which should thereafter accrue to the wife by descent, than is here employed, when construed in connection with the other portions of the instrument conveying the same to a trustee, the said property to be and remain the separate property of the wife—in nowise subject to his contracts, or liable to the payment of his debts. The labor and services of the slaves are to be under the control of said Henry, her intended husband, after the consummation of the marriage, during their joint lives. The increase of the female slaves to remain her separate property, and upon the death of either of the parties, the property so limited shall vest in the person to whom said Mary shall, by deed, will, or other writing, signed by her in the presence of two or more witnesses, order, &c.

Under the state of the case made by the facts set forth in the record, it becomes unimportant for us to inquire, whether the anticipated acquisition of property by Mrs. Trippe, at the time she entered into the antenuptial agreement, " by inheritance, or otherwise whatsoever," would embrace the property which was subsequently acquired as her share from the estates of Mrs. Dawson and Sarah Creagh. The rule of law in respect to such agreements, undoubtedly is, that nothing is embraced which is not within the view and contemplation of the parties at the time of entering into the contract. Atherly on Mar. Set. 25 ; 1 Ves. 507 ; 2 Ib. 304 ; Williams v. Williams, 1 Bro. Ch. Rep. Amer. ed.) 139, marginal, p. 152. Perhaps the terms, or 'otherwise whatsoever,' could not be properly construed to embrace property *unexpectedly* obtained, otherwise than by inheritance, nor to the earnings of the wife during coverture, which, as against the husband's creditors would be fraudulent. Keith v. Woombell, 8 Pick. Rep. 211. Nor need we enter into the discussion as to whether the anticipated interest of the wife by inheritance, was a contingent interest, capable of being assigned, or a *mere possibility*, which may not be transferred. The record clearly shows, that the husband received and held this property, not *as husband*, but in strict subordination to the right of the wife, which right he continued to recognize up to his death, and which his representative has recognized since his decease. So that the husband having asserted no

title or dominion over it *jure mariti*, but having held it as the property of the wife, subject to the agreement he had entered into, her right by survivorship is complete. Johnson v. Uren, 3 Stew. Rep. 172; Mayfield v. Clifton, Ib. 372; Bibb v. McKinley et al. 9 Por. Rep. 636; Terrell v. Greene et al. 11 Ala. Rep. 216; 1 Wms. Ex'rs, 557; Wall v. Tomlinson, 16 Ves. 413; see also, Hill on Trustees, 415.

In respect to the agreement, it may be sufficient to observe, that it is the duty of the court to carry it into effect if its provisions be lawful, according to the intention of the parties, and that the intention of the parties in this case, to exclude the husband from any right to the slaves beyond the *usufruct* for the joint lives of himself and wife, is too apparent from the face of the instrument to need comment. We know of no rule of law, and no case has been cited denying to the parties before marriage, the right to make such contract. Hill on Trustees, 408.

We must presume that the trustee of Mrs. Creagh had a right to receive her share of the estate of Mrs. Dawson, as there is nothing appearing upon the record to raise a contrary conclusion, and the representative of Mrs. Creagh delivered the property to Henry Trippe, in virtue of a power of attorney, received from such trustee. This property the husband regarded and held as his wife's, under the marriage contract, and there is no evidence that he held it as a bailee, for the trustee, or that either of them so considered it. So that, in our judgment, the plaintiff, as executor of Henry Trippe, can found no right to recover upon the idea of a bailment, against the repeated declarations of his testator to the contrary.

By the terms of the antenuptial agreement, Mrs. Trippe had the power of disposing of the property by will, or deed, signed in the presence of two or more witnesses. The bill of exceptions contains a deed of gift from her to Martha and Warren F. Trippe, of all the property which then belonged to her, or was her's in her separate right, at and before the marriage with the said Henry. The deed declares, "that said property is hereby fully and freely incorporated with his (the said Henry's) estate, and all manner of contracts, settlements, or legal hindrances to the attainment of that end, are

hereby waived; I (the said donor) reserving the right, as a consideration herefor, to become an equal heir in the estate of my husband with his children, who are the parties to the second part in this deed." This deed was signed and executed as the articles of agreement entered into previous to the marriage provided, and appears also to have been recorded.

It is insisted on the part of the plaintiff, that the effect of this deed is, to vest the property in the estate of the husband —in other words, to incorporate it in his estate, so as that after the debts of his estate are paid, the balance will remain for distribution among his distributees; while the defendants contend, that it is void and inoperative, because—1. Made without the knowledge of the trustee in the marriage settlement. 2. There was no consideration—not a good one, the donees being strangers, nor yet a valuable one, the estate of the husband being insolvent. 3. There was no delivery of the deed, or the property conveyed, &c. 4. For uncertainty, both as to the grantees and the property sought to be conveyed.

As to the first objection, it is only necessary to say, that the deed of settlement, which confers the power of appointment, does not provide for the concurrence of the trustee in the execution of the power. And in the absence of such power reserved in the deed, the wife being vested with a separate estate, might, notwithstanding the intervention of a trustee, dispose of it without his consent. It is proper, where a fund subject to a power is vested in a trustee, that notice of the appointment should be served upon him, but this is only required to fix the liability of the trustee, in cases where he has paid out the fund to a subsequent appointee after such notice of the prior appointment. 1 Sug. on Powers, 257; Cothway v. Sydenham, 2 Bro. Ch. Rep. 391, Am. ed. 312. The case before us involves no such controversy.

As it respects the *consideration* for the deed of the wife to the husband's children, we regret that the case is too barren of circumstances to enable us to pronounce a satisfactory judgment upon it. It was certainly competent for the wife to have given her separate estate to the children of her husband, and the delivery of the deed, as has been frequently decided by this court, is effectual to vest the property. This

delivery we must intend from the language of the bill of exceptions, which states that the *execution* of the instrument was duly proved. But it is insisted, the face of the instrument shows, that the consideration was to be valuable—namely, the provision made for the grantor, by her husband, in his will of even date with the deed. The provision made in the will, is, that the wife take one third of the testator's property, both real and personal, after his debts are paid, and some specific legacies are deducted. It is shown that the estate of Henry Trippe, has been reported insolvent by the executor to the orphans' court, and that the court has so declared it, and from this it is argued that Mrs. Trippe, or rather, her administrator, can obtain nothing from the estate as an equivalent for the deed, and that it is *nudum pactum*. This argument cannot be sustained. The husband is neither a party or privy to this deed, so far as we are advised by the facts of the case. The deed is to operate as between the wife and the children. As to them it was purely voluntary, as the children were to part with nothing in consideration of its execution. Upon its delivery, their interest became vested, and nothing remained for them to do. In other words, the gift was perfected. But allowing that there was an understanding, or agreement, between the husband and wife, that he would insert in his will the provision which is therein made for the wife's benefit in consideration of the deed, it by no means follows that the deed shall be void, because his estate has been declared insolvent. There is no evidence of any fraud on the part of the husband—no importunity, or the exercise of undue influence. Indeed the circumstances repel the inference of conduct so unnatural ; for in five days thereafter, the then flickering lamp of life became extinguished, and it could hardly be supposed, that the last hours of his existence should be employed in perpetrating a fraud upon the disconsolate partner in his sorrows, to whom he committed the custody and education of his orphan daughter, and towards whom he entertained the tenderest affection.

At the arrangement was entered into, perhaps it was impossible to arrive at any certain or satisfactory estimate of what would remain after the payment of the husband's debts. Much would depend upon the fluctuation in the value of the

property, and its management and preservation, as to whether a surplus would remain.  The provision made by the will, must therefore, in the nature of things, have been contingent, but as we have seen a contingent interest may be transferred by deed, and *a fortiori* by will, this provision furnished a sufficient consideration in law to support the deed.  And why may we not suppose the wife contracted with a knowledge of the doubtful character of the provision made by the will for her?  Having no children of her own, nor brothers nor sisters, was there any thing unnatural in her desire to provide for the infant children of her husband, then shortly to be cast upon the world without father or mother?  We think not.  Were the wife complaining, a court of chancery, which, while it allows the wife to sell, or even give her separate estate to her husband, yet views the transfer with a jealous eye, would narrowly scan the transaction, and perhaps would set aside the deed, or decree a suitable maintenance to the wife out of the property.  Be this as it may, she has gone hence, and so far as we are advised, was satisfied with the deed which she made, at least the record shows no effort to repudiate or set it aside.  Under such circumstances we cannot do otherwise than come to the conclusion, that the deed is valid at law, and vests the estate as is therein provided.  Clancey's rights of married momen, 247, *et seq.* and cases cited.  The objection as to there being no delivery, we have already noticed; and as to the uncertainty complained of, it is sufficient to remark, that a particular description of the property is unnecessary.  It is enough that the grantor in general terms designate the property, so that with reasonable certainty it can be identified.  This she has done in the deed before us, by conveying all the property that she held in her *separate right*, &c.

We do not, however, agree with the counsel for the plaintiff in error, that the property specified in the deed is so incorporated, or merged in the estate of Henry Trippe, as to belong to and form assets in the hands of his executor.  The property is conveyed to the children, not the husband.  They take it, not as distributees of the father, but by virtue of the deed, as a gift from Mrs. Trippe.  If she had intended the property to vest in her husband, so as to have enabled him to dispose of

it by his will, the conveyance of it would most undoubtedly have been made to him, as the usual and appropriate mode of transfering the title ; such not being the case, we cannot intend that by the terms, " such property is hereby fully and freely incorporated with his estate," &c., the wife meant to vest him or his executor with the title. We think the true construction of these expressions, and that which accords with the evident intention of the donor is, that her separate property should be so identified with whatever estate of the husband might remain for distribution, or in the words of the deed "incorporated with it," as to form a common fund in which she and the two children were to share equally. This construction gives effect to each clause in the instrument, and is the only one which will ; and at the same time does no violence to the language employed. The legal effect of the deed, according to our view, is not to vest any title in the husband, or in his executor, but designates it as a fund to be shared equally between Mrs. Trippe and the two children, in common with whatever remains of the husband's estate for distribution.

The charges of the court are substantially in accordance with the law as we have above ascertained it, and the judgment is consequently affirmed.