# MIMS' EXECUTORS *vs.* STURTEVANT.

1. Where a written instrument is so connected with the declarations of a party, that they cannot be fully understood without it, proof of its execution is not a pre-requisite to its admissibility in evidence, in connection with and as explanatory of the declarations.

2. M. or his wife, both being present, handed a paper to the witness, saying, "there is a deed I intended for my daughter P." The witness read the paper and returned it to M., and when examined as to its

contents could only recollect the words, "I give to my daughter P. my negro woman Penny, and to the heirs of her body." *Held*—That this, though not of the most satisfactory character, was evidence sufficient, both of the execution and contents of the deed, to go to the jury, especially as it was shown that the deed could not be found, and that the opposite party, in whose possession it was presumed to be, had been notified to produce it, and had failed to do so.

3. A father, having executed a deed of gift for a slave to his daughter, then a married woman, sent the slave to the residence of herself and husband. The husband, supposing the deed to create a separate estate in the wife, refused to permit the property to remain on his premises, or to have any thing to do with it. The wife thereupon sent the slave back to her father, with the request that he would do the best he could for her, and the father, on its return, stated that he would put the slave to work and account to his daughter for it.— *Held*—That there is nothing in these circumstances to affect the validity of the deed, or to preclude the husband, on its being ascertained that the deed did not create a separate estate in the wife, from asserting his rights under it.

4. Where one receives the slave of another and promises to account for the hire, without any agreement as to the amount to be paid, or the time when the hiring should terminate, and the hire become due, the hire is payable as it is earned, or, at most, within a convenient and reasonable time thereafter; and the owner, after permitting the slave to remain with the hirer for a number of years, has not the option to treat the entire demand as one continuous item, *against which* the statute of limitations cannot run, until the sum last due is payable, nor to exempt it as a *single* item from the operation of the statute of three years.

5. An account—whether of one or more items—founded on a contract, some term of which is left unsettled by the parties, is an open account, and to such the statute of limitations of three years applies.

ERROR to the Circuit Court of Conecuh. Tried before the Hon. Nathan Cook.

THIS was an action of assumption instituted on the 7th Sept. 1846, by the defendant against the plaintiffs in error, as executors of Britton Mims, deceased, to recover the hire of a slave by the name of Penny, from January 1839 to Sept. 1845. The case was tried on issues formed upon the pleas of non-assumpsit and the statute of limitations of three years. It appears by the bill of exceptions that in January 1839, the said Britton Mims sent the slave to the house of the plaintiff, who was the husband of one of his daughters, and that the slave, after re-

maining there a few days, returned with a note, purporting to have been written by the wife of the plaintiff, and containing the following language—"Father—Mr. Sturtevant is unwilling that the negro Penny shall stay here, not as his property. I want you to take her, and do the best you can for me." The note was not produced, nor was the witness who testified to its contents, acquainted with Mrs. Sturtevant's handwriting. The defendant objected to the proof of its contents, unless proof of the handwriting was first adduced, but the court overruled the objection, it being shown that said Mims, who was unable either to read or write, handed the note to the witness at the time it was received, and asked him to read it for him. The record, however, does not show that any exception was taken to the ruling of the court on this point. It also appears that, after the note was read to Mims, he said to the witness, "what would you do, if you had such a son-in-law? Well, I reckon I had better send the negro to the kitchen, put her to work, and account to Peggy (Mrs. Sturtevant) for it;" and at the same time, either he or his wife, both being present, handed a paper to the witness, saying, "there is a deed I intended for my daughter Peggy." The witness read the paper thus handed him, but could recollect none other than these words—"I give to my daughter Peggy my negro woman Penny, and to the heirs of her body;" nor could he recollect whether it was signed, nor whether there was a subscribing witness to it. This paper was not produced on the trial, but it was proved that it could not be found and that the defendants had been notified and had failed to produce it. On this state of the proof, the defendants objected to the foregoing secondary evidence, but the court overruled the objection and the defendants excepted. It further appears that during the time the slave was at the plaintiff's house, he said that he would send her back,—that if a guardian had to be appointed for his wife, the slave should not stay there—that the property was his wife's and had been given to her, and not to him, and therefore he would have nothing to do with it. After the slave returned to the house of Mims, she continued in his possession until his death in the fall of 1845, when his executors delivered her to the plaintiff. The foregoing, with proof of the value of the hire, was all the evidence adduced on the trial. The court charged the jury—1st. That if they believed

from the testimony, that the plaintiff, in refusing to accept the gift or to have any thing to do with the slave, did not intend to reject it as a gift to his wife, but meant that she should have the slave as her separate property, it would not amount to a rejection of the gift. 2d. That if the wife of the plaintiff, after receiving the slave as a gift, sent her back, because the plaintiff refused to have any thing to do with her, and requested her father to take charge of and employ the slave for her benefit, and that he received and agreed to hold the slave in accordance with the request and did in fact so hold her, it could not be regarded as a rejection of the gift.

The defendants requested the court to instruct the jury that the demand sued for was an open account, and that the statute of limitations being pleaded, the plaintiff could only recover so much of the account as had accrued within three years and six months of the commencement of the action. The first portion of this charge the court gave, but refused the remainder, and instead thereof, stated to the jury that, although the demand was an open account, if they found that the testator's possession of the slave, under the promise to hold her for his daughter's benefit, was continuous, the statute of limitations would not run against any part of the account, until the contract was put an end to by act of the parties or otherwise. The ruling and charges of the court are now assigned as error.

WATTS and BLOUNT, for the plaintiffs in error.

LESLIE, for the defendant.

PARSONS, J.—Sturtevant brought his action of assumpsit in the court below, against the defendants, as executors of Britton Mims, to recover the value of the hire of a negro woman called Penny, who had been for some time in the possession of the testator before his death, and remained in the possession of the defendant, as his executors, for some time afterwards; but the present action is confined to the demand against the testator. This case is very different from a case between the same parties in this court before.—See Mims & Mims v. Sturtevant, 16 Ala. 154.

It appears by the bill of exceptions that Britton Mims, in 1839, sent the negro woman to Sturtevant, whose wife was his

daughter. The negro after a few days returned to the house of
Mr. Mims, the testator of the defendants below, and delivered
him a note, purporting to be written by Sturtevant's wife, in
these words: "Father, Mr. Sturtevant is unwilling that the
negro Penny shall stay here, not as his property. I want you
to take her, and do the best you can for me." And from that
time the negro remained in the testator's possession until his
death. This note was not produced on the trial, nor was the
witness, by whom its delivery to the testator and its contents
were proved, acquainted with the handwriting of Mrs. Sturte-
vant. The defendants below objected to the proof of its con-
tents, because it was not proved to have been written by Mrs.
Sturtevant, but the court admitted evidence of its contents.
There was no exception, however, to this act of the court, and
therefore it is not properly subject to our revision. But we
think there was a reason which rendered the note itself, or if it
could not be produced, evidence of its contents, admissible on
the trial, although its genuineness could not be proved. With-
out it, the remarks of the testator, when it was read to him,
could not be fully understood. He received the note, which
was brought to him by the negro, when she returned into his
possession. His remarks on the occasion, as rendered intelli-
gible by the note, whether it was written by his daughter or not,
tended to show what he himself intended by taking possession
of the negro. Thereby the jury were enabled to determine
whether he took possession of her in his own right, or subject to
the title which he had conveyed, or attempted to convey, to his
daughter by the deed. As the note, or, in a proper case, evi-
dence of its contents, is admissible evidence, we will recur to it
in another part of this opinion.

The testator's deed of gift of the slave to his daughter was
not produced on the trial, but it was proved that it could not be
found. The question is whether the secondary evidence of its
execution and contents, which was offered, should have been al-
lowed to go to the jury. Some days after the testator sent the
negro to Sturtevants', she returned with the note which has
been mentioned. The note was read to him, he and his wife
both being present, and, on the same occasion, one of them, and
the witness could not recollect which, handed the witness a pa-
per, saying there is a *deed* I intended for my daughter Peggy,

who was Mrs. Sturtevant.   The witness could only recollect the following, as some of the words of the deed: "I give to my daughter Peggy my negro woman Penny, and to the heirs of her body."   The witness did not remember whether or not it was signed, or had a subscribing witness.   This evidence of the deed was objected to by the defendants below, but it was admitted by the court, and they excepted.   The testator or his wife, whichever it was that spoke, called the paper a deed, and mentioned the purpose for which it was intended.   This, if said by the testator himself, was clearly evidence of the execution of the deed—and as it was stated that it was intended for Peggy, that, and the few words of the deed, which were recollected by the witness, were evidence of its contents.   But if it were the testator's wife who spoke, it was in his presence, and the inference from what is stated must be that he assented to what was said, and consequently it is evidence against him and his representatives.   The evidence, however, was not of the most satisfactory character, either as to the execution or contents of the deed, but we think it was sufficient under the circumstances to go to the jury.   It was proved that the deed could not be found. When last seen it was in the testator's possession.   It was not proved that the executors had the paper, but we think that fact may be presumed.—See Maulden, Montague & Co. v. Amistead, Ex'r, &c., 14 Ala. 702; Powell v. Knox, 16 ib. 364.

If the secondary evidence be not fully satisfactory, they who are presumed to have had control of the best, should have produced it, for in this case they had been notified to do so.   Although it was not entirely satisfactory, yet, under these circumstances, we think it was right to admit it.—See Bright & Ledyard v. Young et al., 15 Ala. 117.

We think there was evidence in this case, tending to show that the testator did not intend, by receiving the negro back, to hold her in his own right, but to hold subject to the title which he had conveyed by the deed, and to account for her services accordingly.   Doubtless he thought the title had been legally conveyed by the deed to Sturtevant's wife, exclusive of her husband, and for a time her husband also thought so.   The note which came, as he supposed, from his daughter, requested him to take the negro, and do the best he could for her, Mrs. Sturtevant.   When he heard it read, he observed, "Well, I

reckon I had better send the negro to the kitchen—put her to work and account to Peggy for it." The negro remained there until some time after the testator's death, when she was delivered by the executors to Sturdevant. The testator having expressly taken possession of the negro, to be put to work and to account to his daughter for her services, there is no question but that his daughter could have recovered hire of him, if the deed had in fact vested the property of the negro in the daughter, exclusive of her husband. But as the deed, in fact, did not exclude the husband's marital rights, and the property became his absolutely under the deed, the payment of the hire should be made to him. He might have released it, or if it had been made to his wife, it would have been his—and upon the undertaking to account to his wife for the services or hire, he might maintain, and in fact has brought an action in his own name.

There is no question relative to the delivery of the deed by the testator, distinctly reserved for us. For that reason we pass that point, remarking only that the testator's continued possession of the deed is not necessarily inconsistent with the idea of a delivery in fact or in law.—See McClure et al. v. Colclough et al., 17 Ala. 89, and cases there cited.

Not to speak of Mrs. Sturtevant's note, there was some legal evidence tending to show that Sturtevant, while he believed that he was excluded by the deed, refused to act as trustee for his wife, and was not disposed to suffer the negro to remain at his house. But it is not our inference from the evidence that he intended to any greater extent to prohibit her from enjoying the benefit of the gift. When the negro returned to the testator, the latter did not consider the gift at an end; therefore, if for no other reason, the validity of the deed remained as it was. And when Sturtevant afterwards found out that the negro was his, we do not see why he might not claim her. He never intended to renounce his own right.

Without stopping to make an application of what has been said, to the case as it appears by the bill of exceptions, we come to the last point in the record. The defendants below pleaded the statute of limitations of three years, averring that the demands sued for were open accounts. And in reference to this, they requested the court to charge the jury, that the plaintiff could only recover such parts of the account as had accrued within

three years and six months before the commencement of this suit, allowing the six months for the time, during which no suit could have been brought, in consequence of the testator's death; which charge the court refused. In this, we think there was error. There was no promise to pay or account for hire, except as already mentioned. This was not a contract of hiring, which was to terminate at a particular time, and according to which the hire was then to be paid. In such case no action would accrue until the end of the term, and consequently the statute would only commence running at that time. In this case the hire became payable as it was earned, or, at most, within a convenient and reasonable time thereafter, and the plaintiff below might have brought his action accordingly.

Lord Hardwick thought that in an action by one tenant in common against another, for rents and profits, the statute was a bar to any demand further back than six years.—Prince v. Heylin, 1 Atk. 493. And it is said that this rule has ever since been recognized in cases where the defendant is charged as receiver.—Angell on Lim. 73, note 3.—But the question is whether the statute of six or of three years shall apply to this account; and that depends upon the question whether it is an open account, within the meaning of the statute, to which the limitation of three years applies. If the plaintiff had made out his account in different items, to correspond with the periods, when according to the case it was payable, then it would have been manifestly an open account, because the amount to be paid and the times of payment were not ascertained by any contract, but left open. He has not the option to elude the statute by considering the whole demand as one continuous item, against which the statute could not run until the last was payable; nor has he the option to exempt it as a single item from the statute of three years. In this case all the demands are on one side. It is not a mutual contract; therefore the items which accrued within three years do not draw the rest after them, so as to exempt them from the statute.—Todd v. Todd, 15 Ala. 743. It was held by this court, in the case of Sheppard v. Wilkins, 1 Ala. 62, that an open account is one, in which some term of the contract is not settled by the parties, whether the account consists of one item or of many, and that in such case the statute of three years applied. In this case there was no agreement as to

the amount to be paid by the testator—therefore, the case last cited is in point.

The judgment is reversed and the cause remanded, to be proceeded in, not inconsistently with this opinion.