### THOMAS & HARRIS *versus* HEARN, *et al.*

It is an inflexible rule, that chancery will not relieve against a judgment, where a party has been heard at law, unless he were ignorant of facts pending the suit, or those facts were such as could not have been received, as a defence at law.

Where facts and circumstances, available as a defence at law, have been omitted to be relied on, or where those matters have been passed upon by a Court of competent authority, and no steps have been taken to correct an erroneous decision of such Court, in relation to them; chancery will not interfere.

Where two, of three joint owners of a mill, were compelled to pay a judgment at law, on account of the joint property, the Court of Chancery, (under the circumstances, to save litigation, its jurisdiction being concurrent,) entertained a bill, and compelled the third joint owner, to contribute his proportion of the said judgment.

This case was commenced by bill in chancery, filed by the complainants in the Circuit Court of Jefferson. The bill disclosed, that on the 7th day of June, 1821, the said complainants, together with one of the defendants, Sims, for themselves and others, entered into a written contract with Hearn and San-

ders, for the erection of a mill dam, whereby, in consideration of the sum of two thousand dollars, the said Hearn and Sanders, bound themselves to construct said dam according to a specified manner, and in such a way as that it would stand good for the space of two years. That in part consideration for the building of said mill dam, the said complainants and Sims, executed their note for three hundred and fifty dollars, to the said Hearn and Sanders, to be paid in six months after the completion of the dam. That at the same time it was verbally understood, between the parties, that the said note and written agreement should remain in the care and possession of Thomas, until the contract under the agreement should be completed. That afterwards, and before the said work was finished, one Jones, since deceased, and then a partner or joint owner in the said mill, took the agreement and note into his possession, for examination. That after the death of Jones, his representatives Sims and one Banks, instituted an action, and recovered judgment on the note, in the name of said Hearn and Sanders, for the use of Sims, and Jones' estate. The bill further stated, that on the trial, at law, to recover the amount of the note, the Court rejected the complainants' defence, that the mill dam was not completed under the contract of Hearn and Sanders, and referred the complainants to their cross action. It also charged, that Hearn and Sanders were insolvent; that a fraudulent combination existed between Sims and Hearn and Sanders; and prayed that the judgment should be enjoined, and their judgment off-set against that obtained by Sims and Banks against them. The record shewed, that after the filing of the bill in this case, the complainants had prosecuted their action on the written agreement against Hearn and Sanders, and had reco-

vered judgment for the breach thereof, for upwards of two thousand dollars. · The answers of Hearn, and Sanders, generally denied the allegations of the bill; denied their insolvency, and averred themselves able to pay all the demands of the complainants against them.

Sims, by his answer, averred, that the note sued on, was the property of himself and Jones; that it was sued in the name of the payees, because it was not indorsed ; and insisted on his belief that the note went fairly into the possession of Jones.

There being no testimony rebutting the answers of the defendants, on a final hearing, the Court dismissed the bill, with costs. To reverse this decree, the complainants took a writ of error to this Court.

PECK and BAYLOR, for Plaintiff in error, cited in argument, *Ala. Rep.* 106, 114—7 *Johns. Chan. Rep.* 240—1 *Johns. Chan. Rep.* 91—14 *Johns. Chan. Rep.* 91—5 *Cranch,* 322—6 *Cranch,* 9, 51—3 *Cranch,* 220.

WILSON, *contra.*—2 *Hen. & Mun.* 146.

By Mr. Justice HITCHCOCK :
The bill in this case, charges, that the note upon which the judgment was rendered, was, by agreement, to remain in the possession of Thomas until after the mill dam should be completed, according to contract, and was not till then to be delivered to Hearn and Sanders : that it did remain in the custody of Thomas for some time, but that before the completion of the work, it got by accident or inadvertence, into the possession of Jones, one of the partners in the mill company, who did not return it, but kept it in his possession until his death, and that it never was delivered to Hearn and Sanders, by the complainants

THOMAS AND HARRIS *vs.* HEARN, *et al.*

Thomas and Harris, or by either of them, by their consent. It further charges that the work never was completed according to contract; that Sims and Jones were both partners in the mill company; that Sims, and complainants, were joint agents of the company; and that the note was given for the benefit of the company; that Sims and Jones were fully apprised of the circumstances under which the note was made, and of the non-performance by Hearn and Sanders of their contract. It avers, that the complainants endeavored to defend themselves at law, on the ground of the failure of consideration, but were told by the Court, that they must sue on the bond for the performance of the contract. It charges Sims with using his exertions to procure a judgment in favor of the plaintiffs, although he was himself a co-defendant. It charges, that the complainants have heard, and believe, that at the time Jones got the note, Hearn and Sanders were indebted to him and Sims, who were partners in trade, and that, fearing they might loose their debt, they agreed to take the note, either absolutely or conditionally, as payment, although they well knew the terms and conditions on which it was made, and as they believe, with a view to recover the amount of the complainants, and to put the money in their own pockets. They charge a fraudulent and collusive combination between Jones and Sims and Hearn and Sanders, to defraud the complainants. They aver, that Hearn and Sanders are insolvent; that they are liable for damages on their contract, to a much larger amount than the judgment; and pray an injunction until the suit they are about to bring, at law, may be decided; and that one judgment may be set off against the other, and for general relief. The supplemental bill states, that they had obtained judgment against Hearn and Sanders, for two thou-

sand dollars on the bond, thereby establishing a breach of the contract for the erection of the mill dam.

The answer of Hearn and Sanders admits, that the dam was not erected in strict conformity with the contract, but that it was altered by the consent of Thomas, the acting agent of the company. They consider the work to have been strictly and substantially done, according to the agreement, as modified by the consent of Thomas. That if the work has not stood firm, they believe the principal reason to have arisen from the manner of erecting the mill-house, with which they had no agency, and from the modifications made, by consent of Thomas, in the erection of the mill dam. They say they are *strangers to any* agreement, that the bond or note should remain with Thomas, as stated in the bill; that they are ignorant of the manner in which Jones obtained it; that, however that fact may be, Jones did not shew it to them, until after the completion of the work; that, Jones being a partner in the company might have had access to the papers; that, whether Sims and Jones, or the representative of Jones, are interested in the recovery, they think is immaterial to the complainants; that, they being the plaintiffs of record, no *beneficial interest of Jones or Sims, they think, can be noticed.* They say they understood that the decision of the Court, in excluding the defence at the trial, at law, is not such as the bill represents; that the only point decided, as it is believed, was, that the *issue was* too narrow and restricted to admit of evidence to shew, the manner in which the dam was completed; that the only matter put in issue, was the time when it was completed. They say they consider themselves amply able to pay any sum which the complainants may shew to be due; and Hearn avers he is not insolvent; and they deny any

intention of coercing payment out of the complainants, individually, but from the property of the company, that being first liable, &c.

Sims, in his answer, admits the contract to build the mill; that he does not know whether it was well built or not; that having disposed of his interest in the company, he had no concern, except to see that the debts contracted while he was a partner, should be paid. He admits, that the note sued on belonged jointly to Jones and himself; that he has learned it was taken in payment for a debt due Jones and Sims, but when it was taken, or on what terms, he does not know; that, as there was no endorsement or other transfer made, as passed such an interest as would enable them to bring suit in their own names, the suit was brought in the name of the payees. He conceives it is not important to the complainants case, what his (Sims's) interest may be, in as much as it is of an equitable character, the benefit of which could only be obtained by the prosecution of the suit in the name of the payees—one, which presents no barrier to a recovery in the form, in which the suit is brought, and that, even if it were so, it is an advantage which should have been taken at the trial at law. That, from his knowlege of Jones's character, and from his never having heard from the complainants before the institution of the suit at law, any thing suggested as to the manner in which Jones obtained the note, he cannot but believe that he came fairly by it.

Banks, executor of Jones, denies all knowledge of the transaction, except from rumor—sets up no claim to the money, and demurs to the bill, as do all the defendants.

All the matters charged in this bill, which relate to the manner in which Jones obtained possession of the note or bond; the consideration, if any, upon which

it passed to Jones and Sims; the failure of Hearn and Sanders to comply with the contract to build the mill dam; and the refusal of Sims to unite in the defence of the suit, were within the full and perfect knowledge of the complainants before the rendition of the judgment at law, and however forcibly they might have presented themselves to the breast of a chancellor, on an application for a bill of discovery, to be used on the trial at law, (and the Court are constrained to say, they present very powerful considerations) yet it is an inflexible rule, that a Court of Chancery will not relieve against a judgment, after a party has been heard at law, even where the fraud goes to the whole judgment, unless the party were ignorant of the facts pending the suit, or they were such as could not have been received as a defence at law.[a]

¹1 Johns. Ch. Rep. 98—320. 6 ib. 87.

In this case, the ignorance of the party is not alleged; neither is it averred that the party could not have proved all the facts set forth in the bill, by testimony *aliunde*, at the trial at law.

The grounds set up for going into chancery, are the facts, that the Court refused to permit the party to give evidence of a partial failure of consideration. The rule of decision being, at the time of the trial, it is alleged, opposed to the admission of such evidence; and the fact of the alleged insolvency of Hearn and Sanders.

Whether that rule of decision be correct, or whether later decisions have relaxed or modified it, it is equally clear that the party cannot now come into chancery and urge it as a reason for relief against the judgment at law. The matter was passed upon by a Court of competent jurisdiction, and no point was reserved for revision before a higher tribunal. To allow it to be again brought before a Court of Chancery, would open a door to endless litigation, which

would destroy the distinction between the two courts, and the Common Law Courts would ultimately be swallowed up in Chancery.

As to the question, whether the alleged insolvency of Hearn and Sanders can be urged to enable the party to off-set the claim for damages, which has since been reduced to judgment, it may be remarked, that the judgment having established the right of recovery, in favor of Hearn and Sanders, and excluding, as it has been shewn we are bound to do, every thing relating to the manner of the transfer of the note to Jones, and admitting, as the bill does, the indebtedness of Hearn and Sanders to Jones and Sims, is there any thing in the case which will defeat their right to the benefit of the judgment, or in other words, will the alleged insolvency of Hearn and Saunders, at the time of the transfer, admitting it to be true, have that operation.   It is admitted, that a man in failing circumstances, may prefer one creditor to another, and in the aspect in which this case appears, does it present any other principle ?   If it does not, what peculiar objection is there to prevent Jones from availing himself of it, in this case.   His relation to the company could not preclude him from securing his own debt, and that of his partner, or from doing any thing which any other person who stood in the relation of creditor to Hearn and Sanders, might have done.   It cannot be doubted, that Hearn and Sanders could have rightfully transferred the note to any *bona fide* creditor, not belonging to the mill company, and it will not be pretended, that in such hands, this set-off could be allowed—more especially when the set-off is a claim sounding in damages, and the suit not yet brought.   But admitting, that since the judgment for damages has been recovered, the equities are equal; the claim of Jones and Sims, is prior in time to

that of the complainants, and upon every principle, must be preferred.

That Sims refused his aid in the defence at law, cannot avail the complainants in this stage of the proceedings, whatever it might have done, on a bill filed in reference to the manner in which Jones obtained possession of the note. The defence having been so conducted as to preclude that investigation, he was not bound to defeat the recovery at law.

The only point then, left open for consideration, is, whether the bill can be entertained, so far as to compel Sims to contribute one third of the judgment and costs of the suit at law, on the ground of his original liability, as one of the obligors to the note or bond. On this point the Court has had some difficulty, as it would seem, that this could be recovered at law. But, under the circumstances of the case, and as the jurisdiction of a Court of Chancery is concurrent with a Court of Law, in matters of contribution—as the money has been received by Sims, to save delay and multiplicity of actions, as each of the complainants might have to sue for his share of the amount paid by him, we think the bill should be retained for that purpose.

On this ground then, the decree below must be reversed, and a decree rendered here, in favor of the complainants, against the defendant Sims, for one third of the judgment, interest, and costs, of the suit at law in favor of Hearn and Sanders, computing the interest from the time of the rendition of the judgment in the Court below, together with the costs of the proceedings in Chancery, in this Court, and in the Court below.