## DEMENT, ET AL. v. THE ADM'RS OF BOGGESS.

1. Although the orphans' court may have taken jurisdiction of the settlement of an estate, yet if there are assets in the hands of the administrator not administered, and the settlement in the orphans'·court, though it purports to·be final, remains to be completed as to the various sums left in the hands of the executor, chancery may take jurisdiction.

Writ of Error to the Chancery Court of Madison county— 22d District. Before the Hon. W. W. Mason, Chancellor.

THIS was a bill exhibited in the chancery court of Madison county, by John Dement, George B. Smith, and Benj. F. Hammond, in which they charge, that one Bennet Boggess departed this life, having made his will, which being proved, one Rhoda Horton and William H. Clopton, were

appointed by the orphans' court of Madison county, administrators, with the will annexed, of said estate. That they reported the estate insolvent, and obtained authority to sell the personal, and a portion of the real estate. That said administrators, well knowing the testator to be seized at his death, of a tract of land, described as S. E. qr. and the E. half of the S. W. qr. of section 4, township 2, in range 2, west, &c., failed to take any steps to subject it to the payment of the debts of the estate. That a suit for the recovery of said land, instituted by testator and pending after his death, against one Harrell, was suffered to abate. That on final settlement made by the administrators, after the payment of preferred claims, a dividend was said to be declared of sixty cents in the dollar, on other claims. That complainant, Dement, was a creditor of said testator to a large amount—that he owns various claims which the bill particularly describes, as nominally belonging to others, and which were listed by the administrators in their account with the orphans' court. That after deducting the amount which he had received from the said administrators of Boggess, a large amount still remains due him. That he became the purchaser of certain slaves sold by the administrators, and gave his note with security for the property, amounting to $6,668 which note was payable one year after date, with interest from the time of its execution. That the other complainants, Smith and Hammond, were his sureties on the note. That the note was put in suit by the administrators, and under the belief that he could make no defence at law, he permitted a judgment to be rendered for the amount of the note, with interest. The bill asserts, that the charge of interest was unauthorized by the order granting authority to the administrators to sell. That in 1845, complainants made a calculation of the amount due, less the one year's interest, which they contend they should not be bound to pay, and after deducting the amount previously paid, there remained due only the sum of thirteen dollars, which they offered to pay, but which it was agreed might be considered as tendered. They assert their readiness to pay this sum. The bill further charges, that in the settlement in the orphans' court, the ad-

ministrators were allowed interest on sums paid out by them, when they had, at the same time, funds in their hands belonging to the estate, upon which they were charged no interest. That they failed to charge themselves with interest collected by them; also, with $80 checked out of bank as monies of testator. That they failed to charge themselves with interest on their own purchases, though due before the settlement. It is further alledged in the bill, that various sums have been, by the order of the orphans' court, permitted to remain in the hands of the said administrators, to provide against contingencies which have not, and never may happen—such, for example, as $500, the amount of a claim allowed one Samuel Johnson, and which complainant, Dement, on the settlement, threatened to take to the supreme court, and which never has been taken up. Also, $319 39 retained by them to prosecute a suit against one B. Thompson, &c. That said suit has been ended, and this sum is more than sufficient to pay the cost thereof. Also, that $200 were retained to prosecute suit against one Harrell, when in fact no suit has ever been commenced. Complainant, Dement, asserts his right to a dividend in all the monies so retained, and not accounted for by defendants, and also, in the interest with which they should be charged.

The bill further alledges the death of Rhoda Horton, and the appointment of defendant, Robinson, his administrator, in 1846. Also, that Clopton has removed from this State to Mississippi.

The bill prays an injunction against the collection of the balance of the judgment at law, and that on final trial defendants may be required to satisfy in full the balance of the claims due the estate of Boggess to Dement, and for general relief.

To this bill the defendants appeared, and filed their demurrer, which the chancellor sustained, and dismissed the bill. His decree is here assigned for error.

S. D. J. Moore, for plaintiff in error, cited 1 Story's Eq. 543, § 579; Humphries v. Moore, 9 Por. 283; Thompson, judge, v. Searcy & Fearne, 2 Ib. 226; Bank v. Hooks & Davis, Ib. 270; Wms. Ex'rs, 1239; 1 Story's Eq. 542.

CHILTON, J.—It seems that most, if not all, of the matters urged as grounds of complaint in this bill, could very properly have been litigated and determined by the orphans' court. That court, by our various statutes, is invested with enlarged powers over the estates of deceased persons; but the enactments conferring this authority do not prohibit the courts of chancery from the exercise of that jurisdiction which had previously vested in the courts of chancery, and in such case, the uniform interpretation is, that they confer concurrent, not exclusive jurisdiction. 1 Story's Eq. 96, § 80. It is clear, that in the exercise of its original powers, which remain unimpaired by statutory inhibition, the courts of chancery have jurisdiction over estates in the direction and control of executors ánd administrators, and in protecting the rights of creditors, as well as decreeing distribution of the assets. But as the exercise of this power is not exclusive, but concurrent with the orphans' court, the question arises in this case, whether that portion of the assets of the estate which was embraced in the final settlement had in the orphans' court, and upon which that court has adjudicated, can now be made the subject of an original application to chancery. It is not denied but that there may be cases where the jurisdiction of the orphans' court, limited as it is by legislative grant, may not enable that court to afford relief; in such cases, the court of chancery is adequate to the emergency. Leavens v. Butler, 8 Por. 381. But when that court, having jurisdiction of the subject matter, proceeds to determine upon it, can the parties resort to the chancery court to overhaul its decisions? The general rule is, that when courts of law and equity have concurrent jurisdiction, and a defendant elects to defend at law and fails, he shall not afterwards be permitted to recover in equity, unless such failure has resulted from unavoidable accident or fraud, unmixed with negligence on his part. Thomas, et al. v. Hearne, 2 Porter, 262.

In Cherry & Bell v. Belcher, 5 S. & P. 131, the court say that where a bill in chancery is filed by a distributee to compel the payment, by the representatives of an estate, of a distributive share, the fact that the orphans' court has previously by settlement (final or otherwise) ascertained the

amount to which the distributee is entitled, will not preclude the representatives from showing mistakes in that settlement, or payments subsequent to the settlement, and of which he was then ignorant; or *any other* matter which in equity and good conscience may be relied on in defence.

In Blakey, Adm'r, v. the Heirs of Blakey, 9 Ala. R. 391, it is held that the chancery court may take jurisdiction, after proceedings have been commenced in the orphans' court, in a proper case, and having jurisdiction for one purpose, may retain the bill for all purposes, and proceed to make a final settlement. In this case, a portion of the assets was withheld by the administrator, and the bill sought to enforce the trust and to discover assets, &c.

These authorities are persuasive to show, that although the orphans' court may first have taken jurisdiction, yet as there are assets (assuming the charges in the bill to be correct, and the demurrer admits them, if well stated,) in the hands of the administrator not administered, and as the settlement in the orphans' court, though it may purport to be final, remains to be yet completed as to the various sums left in the hands of the executor, we think the bill can be well sustained. But when the trust fund is ascertained, there are, as we are advised by the bill, other persons, creditors, who are interested in the fund: these should be parties, either complainants or defendants, to the bill. So neither can the land be subjected to the payment of the debts, without the heirs are made parties.

As to the interest charged against the complainants, they agreed to pay it when they purchased the property, and they alledge no fraud, imposition or mistake, in giving the note, but only misapplication of the interest by the administrator. There is therefore, no reason why they should not be charged with it. The injunction should therefore have been dissolved. We are of opinion, and so decree, that the decree of the chancellor be reversed, and the cause remanded; that the complainants be allowed to amend their bill making the proper parties; and that an account be taken of the assets, and distribution be decreed of the trust fund.