Scott, J. The constitutionality of the Delivery Bond Act, approved the 16th December, 1846, is the only question presented. Numerous decisions in the courts of Virginia, Kentucky, Tennessee, Alabama, and several decisions in the federal courts, have settled the principles upon which the act seems clearly constitutional. Many of these are upon statutes identical with ours, except that the express agreement, contained in the bond provided by our statute, “that, in case the property speéified in said bond shall not be delivered as provided therein, the said bond shall have the force and effect of a judgment, on which an execution may be issued against all the obligors,” is not incorporated, whereby these authorities the more emphatically sustain the constitutionality of the act in question — this stipulation being a still more explicit waiver of the right of trial by jury than is contained in the statutes upon which these decisions have been made. And that a party has a clear right in any case to waive the right of trial by jury, seems unquestionable, both upon principle and authority. It is not the trial by jury, but the right of trial by jury, that is to remain inviolate. If a party cannot waive this right, it is a restraint, and not a privilege. The object of this piovision was not to protect the citizen from his own acts, but to protect him from the acts of others: and so of that other provision in the bill of rights from magna diaria, “that no free man,” &c., (sec. 10, Bill of Rights, Ark.,) which was but “to secure the citizen from arbitrary exercise of the powers of government unrestrained by the established principle of private rights and distributive justice.” Bank of Columbia vs. Oakly, 4 Wheaton, 235. Lawson et al. vs. Garrett ad., 5 How. Miss. R. 457. Of what a party voluntarily relinquishes, and dispoils himseli, he cannot rightfully complain, especially against an innocent party. As well might he complain of not having been allowed a trial by jury, in the case of an ordinary judgment by default, after notice, or of a judgment against him on demurrer, when, in the one case, he waives this right by his omissions, and in the other, by his act: as in the case of a delivery bond statutory judgment against him, where he, voluntarily, with a full knowledge of the consequences that are to follow, makes himself, without the solicitation or consent of the plaintiff, a party to procedings already in court, and which have then, in the regular course of the law, progressed beyond the point of a trial by jury, thereby admitting the jurisdiction and virtually relinquishing all claim to rights or remedies inconsistent with the continued progress of the proceedings in their ordinary course, undertaking, not only that the defendant shall discharge duties then incumbent on him, but that he himself will be responsible for his delinquency in a particular mode fixed by law, which law thereby becomes a part of the contract: whereby he not only fixes his own liability, but the .method by which it is to be enforced, and subjects himself as much to the summary remedy as to the liability. On the same identical principle is sustained the constitutionality of laws authorizing judgments on. appeal bonds, writ of error bonds, jail bound bonds, attachment, replevin, and all other bonds given in a cause already in court. And it is on the same general principle that an award of arbitrators is binding when voluntarily sought: that a sale of property under mortgage, with power of sale, is valid: that the confession of a judgment by an attorney in fact is allowed; and many summary proceedings against sheriffs and other officers, and their securities, are held to be constitutional. The constitution of particular tribunals of the parties’ own creation or selection, for the adjustment of controversies among themselves, touching many of their private rights, the temporary privation or surrender of these rights in the submission voluntarily to summary remedies, being among the most common incidents of life. True it is that the public policy of a country may, and does, set bounds to the relinquishment of private rights; but,until such surrender actually conflicts with public policy, the law indulges in no animadversion, nor holds the surrender for nought. And it is sufficient to say that the surrender of such of these rights, touching the trial by jury, and touching the guarantee of having justice distributed to him through the ordinary channels of the law of the land, in the sense of the bill of rights, and the substitution of another and summary channel therefor at the period of the original suit in its progress through the court at which these surrenders were made by the defendant in the execution of the forthcoming bond, contravenes no public policy set on foot by our institutions or preserved by our constitution and laws. And this is all that the application before us requires to be adjudicated, and we will therefore determine no other point. But, inasmuch, as in the examination of the question decided, other questions, touching the remedy when the bond is insufficient for defects apparent upon its face, or upon the face of the bond and execution, or where it is insufficient for a reason that would sustain a plea of non est factum, have, to some extent, come under our observation, we will remark, that all the authorities seem to concur that, after the term has elapsed to which the bond is returned, relief for either cause is beyond the power of that court unless in cases where the bond is an absolute nullity. The position seeming to be based upon the idea that the court of law would no more set aside, at a subsequent term, that which, by operation of law, has the force and effect of a judgment, than it would an actual judgment formally entered up at a preceding terra: and that after the lapse of that term relief is alone to be sought in a court of chancery, seeming to base this position upon the ground that that court, when the parties’ claim for relief grows out of circumstances that would have sustained a plea of non est factum at law, could fully relieve on a substantive ground of equitable interposition by assimilating this statutory judgment thus obtained to a judgment obtained by fraud without any fault on the part of the defendant. Brooks et al. vs. Harrison, 2 Ala. R. 211. 3 John. C. C. 375. 6 ib. 90. Dev. E. R. 289. 2 J. J. Marshall R. 405. Ib. 513. And especially would the chancellor grant relief in such case if the complainant had in no way been guilty of neglect. 2 Porter, 262. 6 Porter, 24. 7 Porter, 549. But, as to the kind of defence that may be allowed to be made in the court of law, at the return term of the bond, and the manner of its interposition, and by what form of trial it is to be decided upon, the authorities do not altogether agree. In Kentucky, at such time not only may the bond be quashed for such irregularities on its face, but also by means of the writ of error coram nobis, there regulated and perhaps extended by statute, the party may have an issue founded on a plea oí non est factum, and have it tried by a jury. Logan vs. Donaphan, 2 J. J. Marsh. 251. In Virginia, although the trial on that issue may be demanded, the court tries that issue itself, and refuses a jury trial, holding the party bound by his waiver of that mode of trial implied (and seeming to be held as prima facie against him) from the stipulation of the bond to submit to the decision of the court. While, in Alabama and in Mississippi, no other defence will be heard than such as may be predicated upon defects apparent upon the bond, or bond and execution, and are prsentable by motion: all other remedies, these courts seem to hold, are to be sought in chancery. Taylor et al. vs. Powers, use, &c., 3 Ala. 285, and Patterson vs. Denton, S. & M. Chan. R. 598. The constitutional question having been the only one before us, and holding the act of our Legislature in question to be constitutional, the application for supersedeas must be refused.