# Chambers, Administrator, v. Wright.

*Bill by Heir to recover Fund in Administrators' Hands.*

1. *Demurrer, hearing of; to what confined.* — Since the adoption of section 3330 of the Revised Code the court is prohibited from hearing a demurrer to the bill for any cause not specially set forth.

2. *Same; what raises no question as to amendable defects.* — To assign as cause of demurrer to the bill that "it contains no equity," is not a compliance with this law, and raises no question as to any amendable defect.

3. *Demurrer for non-joinder of defendants; when properly overruled.* — A demurrer for non-joinder of parties defendant which does not specify those who should have been joined is rightfully overruled.

4. *Bill; what demurrable.* — A bill by the heir at law, to recover his share of a particular fund in the hands of the administrator of a solvent estate, is defective if it seek relief as to that fund only, and not a final settlement and distribution also. Such a bill, however, is not without equity, and if not assailed for its defects in the court below, the objection cannot be raised in this court.

5. *Set-off; what proper subject of.* — An heir sold certain cotton belonging to the Alabama estate to a third person who was to ship and sell it in New York. On its arrival there it was seized on legal process by the New York administrators. In a compromise with the purchaser, who threatened litigation, the New York

[Chambers v. Wright.]

administrators retained the cotton and paid the purchaser a sum of money on the heir's request to do so "and charge him in their administration account with the amount." It did not appear whether the New York administration had ever been settled, or whether there were any outstanding debts: *Held*, 1st. That the domiciliary administrator could not set off the sum paid by the New York administrator against the heir's claim to a share of the fund here. 2d. If equitable circumstances existed warranting the administrator here in making the charge, he could obtain relief only on cross-bill filed for that purpose. 3d. Mere unliquidated damages, arising out of a *tort* cannot be the subject of a set-off in equity.

6. *Decree for heir's share without refunding bond; when proper.* — It is not erroneous to decree an heir his share of a particular fund in the hands of an administrator, without exacting a refunding bond before coercing payment, when the administrator shows by his answer no reason why it is improper, and it appears that the estate is solvent, that all the other heirs have received their share, and there is no allegation of outstanding indebtedness.

7. *Account; when may be stated without reference.* — When the amount is not in controversy and nothing remains but a calculation of interest, the chancellor may, in his discretion, state an account without a reference to the register.

8. *Interest; when allowable in equity.* — As a general rule interest is always allowed in equity whenever it would be recoverable at law. A party complaining of the allowance of interest must show the special circumstances which render it improper.

9. *Damages on affirmance.* — The court declines to depart from the long established practice of awarding only five per cent. damages on affirmance of a judgment for payment of money, which has been superseded under section 3489 of Rev. Code.

APPEAL from Chancery Court of Russell,
Heard before Hon. B. B. McCRAW.
The facts are sufficiently stated in the opinion.

STONE & CLOPTON, for appellants.

SHORTER & WATTS, *contra.*

JUDGE, J. — James Wright, who was a citizen of the county of Russell, in this State, died intestate in the year 1864, leaving a large estate in said county both real and personal, and over one hundred thousand dollars in money in the hands of J. & D. Malcomsen & Co., of Liverpool, England. William H. Chambers (the appellant) and John Gill Shorter were appointed administrators of his estate, by the probate court of Russell county, and duly qualified as such ; but the said John Gill Shorter afterwards departed this life, leaving the said Chambers the sole surviving administrator. During the administration of Chambers and Shorter they collected or received the amount of said fund in England, which, in the United States currency, amounted to the sum of one hundred and two thousand four hundred and fifty-seven and $\frac{60}{100}$ dollars. It does not appear that letters of administration were ever granted on the estate of the decedent in England ; but the appellant Chambers states in his answer that the fund was recovered by him and Shorter, as administrators, " to be divided among the heirs at law of the intestate." Appellee, who was complainant below, is one of the heirs at law, and his share of

said fund as such heir amounted, at the time it was received, to the sum of six thousand eight hundred and thirty and $\frac{50}{100}$ dollars. Soon after receiving the fund, the administrators proceeded to divide it among the heirs at law of the decedent, and paid to each one, except the complainant, his due proportion thereof; they refused to pay to the complainant his share, on the alleged ground that he was indebted to the estate in a sum as large or larger in amount than his share of the fund.

The claim of indebtedness by complainant to the estate is predicated, substantially, on the following grounds : After the death of the intestate, complainant who was his nephew, and had been living with him, took the possession of, and sold, three hundred and four bales of the cotton then on the plantation of intestate in Russell county; the sale was made to one McAlister, then of Columbus, Georgia, on the following terms, viz. : McAlister was to ship the cotton to the city of New York, and sell it in said city, and pay the complainant fifteen cents per pound therefor, after the sale thereof; and all the proceeds arising from the sale, in excess of the proceeds at fifteen cents per pound, were to be equally divided between complainant and McAlister. Pursuant to this contract the cotton was shipped to New York. On its arrival in that city, it was seized under legal process as the property of the estate of decedent, at the suit of James M. Phillips and William Wright, who had obtained letters of administration on the estate of decedent in the State of New York. McAlister thereupon threatened complainant with a suit for damages, alleged to have been sustained by him in consequence of a breach of the contract between him and complainant for the sale of the cotton. Pending the litigation by the New York administrators for the recovery of the cotton, a compromise was effected by which the litigation was ended, and they obtained the possession of the three hundred and four bales of cotton, as the property of the estate of their intestate ; and by which McAlister's claim for damages was satisfied. The compromise was thus effected : Complainant addressed a note to the New York administrators authorizing them to settle with McAlister on account of his claim against complainant for damages, and leaving it discretionary with them to make the best settlement they could ; and also authorizing them to charge against complainant in their administration account whatever amount they might have to pay on the settlement. The New York administrators thereupon settled with McAlister by paying him the sum of six thousand dollars, and by paying to the consignee of the cotton the further sum of seven hundred and fifty dollars which had been advanced to complainant on the purchase of the cotton, and by paying complainant's attorney's fees,

amounting to one hundred dollars, for services in and about the litigation in New York respecting the cotton.

A further liability of complainant to the estate of the intestate is also claimed by the home administrator for the value of ten other bales of cotton, which it is alleged were the property of the estate, and were converted by him to his own use, by an unauthorized sale thereof, after the death of the intestate ; the value of which is claimed to have been twelve hundred dollars.

The foregoing items, together with interest thereon, the home administrator contends should be charged against complainant's share of the English fund, and also against his share of the estate generally, as one of the heirs and distributees thereof.

It does not appear whether the New York administration has ever been settled, nor whether there are any outstanding, debts against the estate ; but it is admitted in the answer that the estate is solvent, and that it is now being kept together and managed by the surviving administrator for the benefit of the heirs and distributees, under an order of the probate court of Russell county.

The bill was filed against defendant as administrator to recover complainant's share of the "English fund," and was demurred to, and two grounds of demurrer only were assigned, viz. : That the bill contained no equity, and that there was a non-joinder of proper parties defendant.

Upon the hearing of the cause the court overruled the demurrer, and decreed in favor of the complainant for his share of the English fund, with interest thereon. From this decree an appeal is taken to this court.

1. We will first consider the effect of the demurrer to the bill, with the causes thereof assigned.

Section 3330 of the Revised Code declares that " a demurrer to the bill must set forth the ground of demurrer specially, and otherwise must not be heard." To assign as cause of demurrer to a bill simply that " the bill contains no equity," is not a compliance with the requisition of the Code, and raises no question as to defects in the bill curable by amendment. By our Code no objection by demurrer can be taken or allowed, in an action at law, which is not distinctly stated in the demurrer. Rev. Code, § 2656. And it has been held by this court that a demurrer to a complaint, not stating any specific grounds of objection, should, under the influence of the statute, be overruled. *Helvenstein* v. *Higgason*, 35 Ala. 259 ; *Pomeroy* v. *The State*, 40 Ala. 63. The provisions of the Code above cited, in relation to demurrer in equity and at law, are similar in their character, and each should be construed to have the same effect.

2. But it is contended that the demurrer to the bill in this case on the ground of want of equity is a general demurrer, the effect of which is to turn the inquiry upon the equities of the bill. Such was held by this court to be the effect of such a demurrer before the adoption of the provision of the Code above quoted. *Wellborn* v. *Tiller,* 10 Ala. 310.

It is true the 30th Rule for the Regulation of Practice in Chancery of force at the time *Wellborn* v. *Tiller* was decided (Clay's Digest 616, § 30) directed that all demurrers should state the matters of objection. But this was held to be no more than an iteration of the rule which previously governed the practice of all equity courts. *Wellborn* v. *Tiller, supra.* The difference between this rule and the provisions of our Code is, that the one did not prohibit the hearing of a demurrer if it did not state the matters of objection, but turned the inquiry upon the equities of the bill; while the other prohibits the hearing of such a demurrer for any cause not specially named.

3. But if required by the demurrer, in the present case, to pass upon the equities of the bill, we should be constrained to hold that it is not without equity.

The court of chancery has original jurisdiction over the estates of deceased persons; and this jurisdiction has not been impaired or abridged by its having been also conferred upon the court of probate. 1 Brickell's Dig. 647, § 120. It is now the settled doctrine, however, that an *executor* or *administrator* can go into chancery only "when he finds the affairs of his testator or intestate so much involved, that he cannot safely administer the estate, except under the direction of a court of equity;" and that the court ought only to interpose in behalf of an executor or administrator under special circumstances, where injustice to himself, or injury to the estate, may otherwise arise." *McNeill's Adm'r* v. *McNeill's Creditors,* 36 Ala. 109, and cases there cited. But before the jurisdiction of the court of probate has been called into exercise by proceedings commenced for the final settlement of an administration, equity may be appealed to by a proper party without the assignment of a special reason. *McNeill's Adm'r* v. *McNeill's Creditors, supra.* Thus it was held by this court in *Dement et al.* v. *The Administrators of Boggess* (13 Ala. 140), that although most, if not all, of the matters involved in that suit might very properly have been litigated and determined by the orphans' court, yet chancery would take jurisdiction of the case, which was for the settlement of an estate as to unadministered assets, a previous settlement having been made by the administrator which purported to be final; and this in virtue of the original power of the court of chancery which re-

mained unimpaired by statutory inhibition. But in *Scott* v. *Abercrombie* (14 Ala. 279), COLLIER, C. J., in delivering the opinion of the court, stated that " admitting that it is allowable for chancery courts to exercise a general primary jurisdiction for the purpose of coercing the settlement and distribution of estates, over which the jurisdiction of the orphans' court is unquestionable and ample, it should at least appear that the estate is in a condition to be distributed."

4. The bill we are considering was not filed to compel a settlement and distribution of the estate, but to recover complainant's share of the English fund. When this fund was received by the administrators in Alabama, it became a part of the general assets of the estate in their hands to be administered, and they were properly chargeable with it as such. Their receipt to the foreign debtor for the fund, in the absence of any claim upon it in the foreign jurisdiction, by the creditors of the decedent there residing, or an administrator there appointed, operated as a complete discharge of the debtor from further liability for the debt. The character of the fund, and the source from whence it was derived, did not authorize the complainant to institute a suit to recover his proportion of that fund alone. His bill should have been filed to compel a final settlement and distribution of the estate, to which all the heirs at law and distributees of the estate should have been made parties. The omission to do this was a defect, and if advantage had been taken of it in the court below, it might have been cured by amendment. But no objection having been there made on account of the defect, it cannot be made for the first time in this court. *Jones, Adm'r*, v. *Beverly*, 45 Ala. 162.

5. In the aspect in which the bill was framed, there was no non-joinder of parties defendant; but the demurrer for this cause did not point out who the absent parties were, and it was for this, if for no other reason, defective. *Chapman* v. *Hamilton*, 19 Ala. 121.

It follows that the chancery court committed no error in its ruling upon the demurrer to the bill.

6. Other grounds of defence are relied upon against complainant's claim, which it is contended arise in favor of the estate on account of the moneys paid by the New York administrators, at the request of complainant, in compromise and settlement of McAlister's claim for damages against him. And it is also contended that complainant should be charged with the value of ten bales of cotton which belonged to the estate of the intestate, and which, it is averred, were illegally converted by the complainant to his own use, after the death of the intestate.

No cross-bill was filed for the allowance of those claims as

sets-off, nor for their allowance against complainant on any other equitable ground.

The written request of complainant to the New York administrators to settle the McAlister claim was as follows : —

" James M. Phillips & William H. Wright, *Adm'rs :*

" *Gentlemen,* — Will you please settle for me with Mr. W. J. McAlister, of Columbus, or his authorized agent or assignee, his claim against me for damages, in consequence of my failure to make the title of three hundred and twenty-three (323) B | C sold by me to him. I leave you to make the best terms you can with him, and charge to me in your administration account the amount allowed or paid in settlement."

(Signed)      " <em>James Wright.</em>"

It is charged by complainant that this instrument of writing was procured from him by fraudulent representations on the part of the New York administrators, and that it is therefore invalid. Testimony has been taken on both sides in relation to this charge of fraud, which we deem it unnecessary to consider, for the reason that even if the agreement was fairly procured, and is binding upon the complainant, we think it clear that the payments made thereunder by the New York administrators cannot be availed of as a charge against complainant in the present suit.

The agreement, by its terms, authorized the New York administrators to charge against complainant, in *their* administration account, whatever amount might be paid under it. This confers no authority upon the Alabama administrator to charge it against complainant in *his* administration account; and in the absence of a cross-bill making appropriate allegations, sustained by proof of sufficient equitable circumstances to authorize it, the Alabama administrator could not make the charge. It stands, under the naked agreement, as a matter exclusively between complainant and the New York administrators.

7. As to the alleged conversion of the ten bales of cotton, it is sufficient to say, that unliquidated damages arising out of a *tort* cannot be made the subject of a set-off in equity. *Pulliam* v. *Owens,* 25 Ala. 492. It is true that when money or its equivalent has been received as the proceeds of the tort, the plaintiff may waive the tort and sue in assumpsit for the money ; but the facts as disclosed by the record were not sufficient to authorize the defendant to make such an election ; and if they were, a cross-bill was necessary for the allowance of the amount as a set-off, inasmuch as it was not given or accepted as a payment or discharge *pro tanto* of complainant's distributive share. *Pearson & Wife* v. *Darrington,* 32 Ala. 274.

[Chambers v. Wright.]

8. It is contended that the complainant should have been required to execute a refunding bond, before the amount of the decree in his favor should be collected. The defendant at the date of the decree had been administrator of the estate for more than seven years; had divided among all the distributees of the estate, except complainant, the amount of the English fund, without requiring or taking any refunding bond from them; made no allegation or claim in his answer that the amount for which complainant sued was necessary to be retained, either in whole or in part, for any legitimate purpose connected with the administration of the estate; did not aver that there were any outstanding debts or demands against the estate, but admitted that the estate was solvent, and of the value of about fifty thousand dollars. Under these circumstances we cannot hold that the chancellor erred in not requiring of complainant a refunding bond.

9. There was no necessity for a reference to the register to ascertain the amount of complainant's share of the English fund. There was no controversy as to the amount; nothing remained to be done but to make a calculation of interest from admitted *data*, and this it was competent for the chancellor to do, without the aid of the register, if, in his discretion, he saw proper to do it.

10. The defendant showed no reason why he should not have been charged with interest. The rule in equity is to allow interest wherever it would have been recoverable at law. *Crocker* v. *Clements, Adm'r*, 23 Ala. 296. There was no error in charging the defendant with interest.

It results from what we have said that the decree of the chancery court must be affirmed.

NOTE BY REPORTER. — At a subsequent day of the term the appellee moved to have the judgment awarding damages on the *supersedeas* bond corrected so as to allow the amount prescribed by the Revised Code, instead of that prescribed by the ordinance of the Convention of 1867. The motion was overruled in the following opinion : —

· BRICKELL, C. J. — A decree was rendered against the appellant in the court of chancery for a specified sum of money, which on a former day of this term was affirmed. The execution of the decree was superseded by the execution of an appeal bond, as prescribed by the statute. R. C. § 3489. We are asked on affirmance, to render judgment for ten per cent. damages, under § 3500 of the Revised Code. By an ordinance of the Convention of 1867, the damages on affirmance were reduced to five per cent. Since the adoption of this ordi-

nance (Pamph. Acts 1868, p. 182), the practice of the court has been to award only five per cent. damages. Whether the ordinance be valid or invalid, we are unwilling to depart from this practice. If the damages should be increased, it lies with the general assembly to apply the corrective.

The motion is overruled.