# Cotton v. Scott.

### Bill to Foreclose Chattel Mortgage.

1. *Payment; cross demands in equity.*—A cross demand can not operate or be treated as a payment in the absence of an agreement between the parties to that effect; hence, an open account for goods sold, can not be set off against a mortgage debt in a suit to foreclose the mortgage, unless the right is asserted by cross-bill.

2. *Unliquidated damages arising from a tort not subject of set-off in equity* —A claim set up in the answer of the defendant to a bill to foreclose a mortgage, that the mortgagee had converted certain shares of stock, the property of defendant, to his own use, and seeking a credit on the mortgage debt for its value can not be allowed as a set-off against the mortgage debt.

3. *Recoupment set up by cross-bill only.*—Notes secured by a mortgage having been executed for the purchase-money of the stock of goods, and good will of a merchant sold without warranty, and after opportunity for, and actual examination by the purchaser, the latter is not entitled to recoup against the mortgage debt for alleged defects in the quality of the goods, and conceding that damages for such defects were proven, they could be allowed only on a cross-bill.


APPEAL from the City Court of Decatur.

Heard before the Hon. W. H. SIMPSON.

Bill by John W. Scott against Mary W. Cotton to foreclose a mortgage. This is the second appeal in this case, the former being reported in 91 Ala. 623.

BRICKELL, HARRIS & EYSTER, for appellants.—No brief came to hands of the reporter.

[Cotton v. Scott.]

MORRIS A. TYNG, for appellees, contended that the defenses set up were cross demands and could not be treated as payments in the absence of agreement between the parties, citing *Aultman v. Gamble*, 88 Ala. 424; *McCurdy v. Middleton*, 82 Ala. 131; *Wharton v, King*, 69 Ala. 365; that such defenses are available only by cross-bill: *Weaver v. Brown*, 87 Ala. 533; *Beall v. McGehee*, 57 Ala. 438; *Chambers v. Wright*, 52 Ala. 444; that damages arising from a tort, can not be subject of a set-off in equity: *Pullian v. Owens*, 25 Ala. 492; *Chambers v. Wright*, 52 Ala. 444; and other cases on points not embraced in the opinion.

HARALSON, J.—When this cause was here, on a former appeal, (see *Scott v. Cotton*, 91 Ala. 623,) we affirmed the validity of the mortgage, and the appellee's right to a foreclosure of the same. The matters for review on this appeal were not then considered. They are three in number: 1st, a claim by appellant for $361.36, for goods alleged to have been sold by the appellant to the appellee, after the sale of the stock of goods by him to her, and after her mortgage to him; 2d, a claim by her against him, for the alleged conversion by him of certain shares of stock of the Decatur Land, Improvement & Furnace Co., which she alleges she entrusted to him; and, 3d, a claim for a deduction from the purchase price of the stock of goods sold by him to her, on account of their alleged damaged condition. These she claims as credits or sets-off, which ought to have been allowed to her on settlement of what was found to be due by her to appellee, on her mortgage debt. The appellant did not seek by cross-bill to enforce, in this suit, these alleged demands against appellee.

On the subject of reliefs under an answer, and such as are available only by cross-bill, we have little need to go beyond our own adjudications. It serves our purpose, in this adjudication, to refer to some of our holdings on this subject.

"If the defendant seeks any relief, a cross-bill is an indispensable prerequisite to its attainment." "The text books seem to concur, in confining the necessity of a cross-bill, to cases where relief or discovery is sought, or where the purpose of a plea *puis darein* continuance is to be accomplished." *Tripp v. Tripp*, 29 Ala. 648, 650.

"As a general rule, a defendant, by answer, can pray nothing but to be dismissed by the court. If he has any relief to pray, it must be done by bill of his own. If it touches the same matter, as that embraced in the original bill,

Vol. 97.

and is necessary to procure a complete determination of the matter, his remedy is by cross-bill."—*Ketchum v. Creagh*, 53 Ala. 228.

In *Beall v. McGehee*, 57 Ala. 438, the defendant, in his answer to complainant's bill, averred that his vendor had misrepresented to him certain portions of the land, as being land that could be reduced to a high state of cultivation, and that he, being a stranger, and knowing nothing of the lands, was deceived by such representations when he made the purchase. Wherefore, defendant proposed in his answer a set-off or recoupment from the note given, because of such misrepresentations.

We held, if there was, by the vendor, a fraudulent misrepresentation of the quality or quantity of the lands, the damages resulting from which are available as set-off against, or recoupment from the note given for the purchase-money, the defense could not be made by the answer alone; and that it is only by cross-bill that a set-off in favor of a defendant can be obtained in equity,—citing *Goodwin v. McGehee*, 15 Ala. 232.

While unliquidated damages, arising out of a *tort*, can not be made the subject of a set-off in equity, mere matters of credit or discharge are always obtainable, even without a cross-bill.—*Chambers v. Wright*, 52 Ala. 450; *Alston v. Alston*, 34 Ala. 16.

The first item of credit claimed by appellant,—that of the account of $361.36,—was an open account, which she claims of appellee for goods sold to him after his sale to her and her mortgage to him. There was never any agreement that this account should be treated as a payment on her debt to him, and in the absence of such agreement, without a cross-bill, it can not be set-off against her mortgage debt to him.

According to the terms of the sale of said stock of goods by appellee to appellant, he was to take, in part payment, certain lots of land in the city of Decatur at a valuation of $5,000, which lots she had purchased from the Decatur Land Improvement & Furnace Company, on which purchase she was still indebted to the company. To pay her outstanding notes, which were an incumbrance on the lots which she was bound to remove, appellant avers in her answer that, on or about the date of her contract of purchase of said stock of goods from him, and afterwards, she delivered to appellee 140 shares of the stock of said D. L. & F. Co., with which to pay off and discharge her notes to that company; that he did pay them off with the proceeds of a part of said stock,

[Cotton v. Scott.]

and had eighty shares left, which she avers he has never returned to her, and which he has *converted*. After stating its value, she says: "Respondent is advised, therefore, that she is entitled to a credit of $1,280, which she claims as a set-off and credit on said note due September 15, 1889, with interest on said $1,280 since January, 1889." And one of appellant's assignments of error is, that the court below did not allow her "credit for the land company's stock *converted* by appellee." Thus, it appears, the appellant treats this claim as one for the conversion of her stock by appellee. It is a claim for unliquidated damages, arising out of a *tort* which, as we have seen, is not the subject of a set-off in equity.—*Chambers v. Wright, supra.*

A contract skillfully drawn, at much length and great particularity, and duly executed by the parties on the 15th of September, 1888, evidences the sale of the stock of goods and the good will of the establishment by appellee to appellant. It states, without any room for mistake, the property that was sold, at the price of $13,500; that appellant was to convey to appellee by warranty deed, duly executed, and free of all incumbrances, the two lots of land in Decatur, at and for the cash valuation of $5,000, as part payment of said sum of $13,500, and for the balance—$8,500—she was to execute to him her two notes, one for $3,500 and the other for $5,000, payable, respectively, in seven and twelve months after date, to secure the payment of which notes appellant agreed to execute and deliver, on that date, a mortgage on the stock of goods sold to her by appellee, which mortgage, it was provided, should contain certain provisions and conditions as touching the payments; when and how to be made; the keeping up of the stock; the keeping of proper books of account of sales, and insurances for the benefit of appellee, *et cetera*, and to be foreclosable on certain specified contingencies. Notes and a mortgage were executed, in accordance with the requirements of this contract, a deed to said lots was duly executed by appellant and delivered to appellee, and all the terms of said contract of sale, so far as the papers show, appear to have been strictly complied with, and the property was delivered into the possession of appellant.

Appellant admits the purchase, as stated, and that she went into possession; but, she sets up in her answer, that a large part of said goods were in a damaged and unsalable condition, and that, at the time said contract was entered into, it was further agreed, and was a part of the consideration of the contract of sale, that appellee should execute to

[Smyth, et al. v. Fitzsimmous, et al.]

appellant a writing, agreeing to reduce from the price, $13,500, at which the goods were sold, the amount of the damage to said goods, but that he failed and refused to execute such writing on her demand. She claims that the amount of ·this damage is $5,000, and that a credit for that sum should be allowed her on her mortgage debt to appellee.

There was no warranty by appellee of the amount, value or condition of the stock of goods. It was a sale of the stock just as it stood, and of the good will of the business. There had been considerable negotiation before the trade was consummated, every opportunity allowed appellant and her agents to examine the stock, and the evidence is not wanting that they availed themselves of it, and well knew what they were buying. It is not claimed or shown that appellee was guilty of any concealment, misrepresentation or fraud in the transaction, further than the charge that he agreed, and refused to execute the alleged agreement, for the reduction for the damaged goods.

To avail herself of the relief she seeks on this account, a cross-bill was necessary.

We find no error in the decree of the chancellor, and it is affirmed.

Affirmed.