## SMITH *vs.* RORERTSON.

1. When a vendor represents his title to be good, it is equivalent to saying that he has a perfect title to the entire tract, unaffected by any gaps in the chain of title, or any defect or incumbrance whatever.

2. A court of equity will rescind a contract of sale at the instance of the vendee, and restore to him the purchase money which he has paid, whenever the contract is tainted with false and fraudulent representations on the part of the vendor relative to the title ; and for this purpose, the whole conduct of the vendor in relation to the matter may be looked to.

3. If the contract is made under a mutual mistake as to the vendor's title, the vendee is entitled to a rescission, if he seeks it within a reasonable

time after the discovery of the mistake, and abandons the possession, delivering or offering to deliver it to the vendor.

4. The vendee's right to a rescission in such case does not depend on his payment or tender of the purchase money, nor upon the vendor's insolvency, but upon his own promptness in seeking a rescission.

ERROR to the Chancery Court of Shelby.
Heard before the Hon. W. W. MASON.

The bill in this case was filed by John Smith against Henry W. Robertson, for the rescission of a contract for the sale of lands. It alleges fraud and false representations as to the title on the part of the vendor at the time of sale, and want of title in the vendor both at the time of sale and at the filing of the bill. It alleges an abandonment of the land by the complainant, and an offer to return the possession, which was refused; also a tender of the purchase money, and a demand of title, both of which were refused. It prays for a rescission of the contract, and a decree for the portion of the purchase money which complainant had paid before his discovery of the fraud and want of title.

The answer admits the sale, but denies all fraud; it also denies that any defect exists in respondent's title, and avers that he has a good title, and is ready to comply with the condition of his bond, and to make to complainant a fee simple title to the lands on the payment of the purchase money; denies that complainant has abandoned the possession, or ever offered to return it to respondent; denies any *bona fide* tender of the balance of the purchase money yet due, and any refusal to make title on full payment being made.

The defendant also filed a cross bill, praying for a sale of the lands to pay the balance due of the purchase money.

There are other matters in the bill, answer and cross bill, which, with the proof in the cause, are noted in the opinion, so far as they are necessary to a right understanding of the case.

On the hearing, the Chancellor dismissed the original bill, and retained the cross bill, decreeing relief on it in favor of Robertson.

The decrees on the original and cross bills are now assigned for error.

RICE & MORGAN and B. T. POPE, for plaintiff in error :

A vendor who gives a bond for title on the payment of the purchase money, contracts to make a good title ; and if he has not the title at the time of sale, he binds himself to get it within a reasonable time, and certainly by the time the money is paid or tendered.—Smith v. Robertson, 11 Ala. 840 ; Wellborn v. Tiller, 10 Ala. 311 ; Young v. Harris, 2 Ala. 311 ; Griggs v. Woodruff, 14 Ala. 20 ; Cunningham v. Sharp, 11 Humph. 116 ; Greenlee v. Gaines, 13 Ala. 198 ; Camp v. Camp, 2 Ala. 632.

If the vendor cannot make title, no tender of the money is necessary, and a rescission will be decreed without a tender.— Griggs v. Woodruff, *supra.* But in this case, by way of abundant caution a tender was made. It was wholly immaterial whose money was tendered, so it was within Robertson's power to take it, and make it his own. If the money was Allen's, as Robertson avers, he was present, and would thereby have been estopped from disputing Smith's right to tender it.

The vendor must not only have title, but he must exhibit it when disputed, that the court may be able to pass upon it.— Cunningham v. Sharp, 11 Humph. 119. Robertson not only does not show title, but his own witness, Moore, shows that the title to over one hundred acres is not in him, but in Aaron Castleberry, with whom Robertson does not pretend to have any connection whatever ; and to another tract of forty acres, the title is not shown to be out of the Government. If the title to this last tract had ever passed out of the United States, it could have been shown by a certified copy of the patent ; the fact that it is not shown, raises the presumption, if it is not conclusive evidence, that the patent has never issued, or has issued to some one else than Robertson or his vendors.

If there was fraud, it was not necessary to abandon the possession.— Read v. Walker, 18 Ala. 331. But Smith did abandon possession in 1843, after having offered to rescind, as soon as he discovered the fraud and want of title.

No offer to rescind, or offer of possession, is necessary, when the defendant, by his answer, shows that it would not have been accepted.—Elliott v. Boaz, 9 Ala. 772 ; Griggs v. Woodruff, *supra.* But Smith offered to rescind, offered possession, and abandoned possession himself.

The fraud shown, and Robertson's continued inability to make title, are principally relied on for a decree.

As to defects in the assignment of dower, see the authorities collected in 2 U. S. Digest 40 § § 342 to 374.

WHITE & PARSONS, *contra :*

1. This record, it is believed, on a careful examination, will show facts sufficient to sustain the Chancellor's decree.

2. This court will " refuse to rescind a contract, where it will not specifically enforce it."—Beck v. Simmons, 7 Ala. 71; Burke v. Park, 16 Ala. 548.

The true question, therefore, is not whether the complainant should be compelled to accept this title; but whether he should have the contract set aside. A vendee wishing to rescind must pay, or offer to pay, the money according to contract, and if the vendor refuses to make title, he must offer to return the possession.—Duncan v. Jeter, 5 Ala. 604; 3 Ala. 40; and he must act promptly and decidedly, upon the first discovery of the cause for rescission.—Griggs v. Woodruff, 14 Ala. 16.

The complainant has not done this. He does not allege, with any degree of clearness, when he first ascertained the defect of title; but it does appear, by his bill, that he permitted a portion of the purchase money to be collected out of him, after he knew of the pretended fraud.

3. There is nothing in the bill, answer or proof, which shows that Smith relied on any assertion made by Robertson concerning the title. He charges, that he had no suspicion of the title, and that he was told by Robertson that he had the title. It is not pretended that Robertson, by any device, evaded an exhibition of his title; he was, at most, simply and honestly mistaken. In this case the ability of Robertson to make the title could have been ascertained, by calling on him to exhibit his title. This the plaintiff did not do. " His failure to do so, is chargeable only on himself, and is a want of that common and ordinary diligence which a court of chancery always requires in cases like the present, before its aid can be obtained."—Steele v. Kinkle, 3 Ala. 358 ; also 9 Ver. 368, Richardson v. Boright.

4. The respondent is solvent; able to respond in damages the payment of the money if he fails to make title. This, therefore, is another reason why equity will not grant relief.

5. The contract was made in February, 1838 ; and the pretended tender was not made until June, 1848. Is this such diligence as the law requires of those who seek relief from their contracts ? But we insist this was not a *bona fide* tender of the money. The bill states as little as possible in relation to it.— The answer is full, and is sustained by the testimony of Autry.

6. The answer of the respondent is evidence for him. It is responsive to all the material allegations of the bill, and unless overturned by two witnesses, or one with strong corroborating circumstances, must prevail.—Smith v. Rogers, 1 S. & P. 317.

7. The testimony of Allen was properly excluded ; and Sims, the other witness, was drunk. The witness Autry sustains the answer throughout ; and if Allen's testimony is considered, the weight of evidence is in favor of the bill.

8. The attention of the court is especially invited to a careful examination of the title, which Robertson insists is good.— The bill makes the attack upon the land held under Harden. The title of Robertson to this has already been passed on.—11 Ala. 841.

LIGON, J.—The complainant in the original bill seeks a rescission of the contract on three distinct grounds : first, on account of fraud on the part of the vendor ; second, defect of title ; and, third, because the vendor, on a tender of the purchase money and a deed of conveyance for the premises, refused to accept the one, or to execute the other.

It is perfectly clear that, where a contract is tainted with fraud, it is void, and when it is ascertained that such is its character, it will be set aside in equity, at the instance of the party injured by it.—2 A. R. 571 ; 13 A. R. 198.

It has been also held, that where one sells land, and binds himself to convey to the purchaser a good title, the vendee is not bound to accept an encumbered or defective one; and when it is shown that the title of the vendor is defective or encumbered, and he fails or refuses to cure the defect or remove the incumbrance, the vendee may come into a court of equity, and rescind the contract ; and in such case, a tender of the purchase money and demand of title, is not necessary to entitle him to his relief. Griggs v. Woodruff *et al.*, 14 A. R. 9. It is immaterial whether the vendor is solvent or otherwise, if the contract with respect

to the title is not fully executed by the making of a deed with covenants of warranty. A court of equity, for the double purpose of protecting the vendee from being compelled to accept a title which is shown to be defective, and to that extent valueless, and to prevent circuity of action or a multiplicity of suits, will interpose for the relief of the vendee.—Newell v. Turner, 9 Porter 420. It would be, indeed, a useless act, for a court of equity to refuse relief in such cases, when it is evident that the only result of such refusal would be, to compel the vendee to pay out his money and accept the conveyance of a title, valueless to himself, and wholly different from the one for which he had contracted, and force him to an action at law upon the covenants of such conveyance, when it is manifest, that these covenants were broken before they were made, and the suit would only delay him in obtaining the redress, to which he is clearly entitled under his contract with the vendor.

But this rule is applicable only to contracts which are executory in their character; if the vendee has accepted a conveyance, he must be left alone to the covenants contained in it for his indemnity against fraud or failure of title, and in such case his remedy is at law, and not in equity.

So, also, if at the time the agreement to purchase is made, a mistake of the true state of title exists with both parties, and, in consequence of such mistake, the vendor makes such representations with regard to it as to induce the vendee to purchase, this, without the intervention of actual fraud, will authorize the vendee, when the mistake is discovered, to disaffirm or rescind the contract, if the mistake be injurious to him; especially, when it is evident that the terms of the agreement would have been essentially different, had the true state of facts been known to the vendee at the time he entered into it.—Daniel v. Mitchell, 1 Story's Rep. 172; Gillespie v. Moore, 2 Johns. Ch. Rep. 596; 5 ib. 175; 6 ib. 255; 2 Cowen 133; 6 Munf. 283.— But, we apprehend, the injured party must, in such case, after the discovery of the mistake, act promptly, or within a reasonable time, in offering to rescind, and abandoning the possession; else, he will be held to affirm the agreement, notwithstanding the mistake.

It has been also held, that although there may be no actual fraud in making a contract, yet a total inability in one party to

fulfil it, discharges the other, and a court of equity will annul a contract which the defendant has failed to perform, or cannot perform on his part.—Bullock v. Bemiss, 1 A. K. Marsh. 434; Skillern's Ex'rs v. May's Ex'rs, 4 Cranch 137.

A vendee who contracts for a good title, will not be compelled to accept a defective or encumbered one; and if it appears the land is subject to a claim for dower, it is an incumbrance which the vendor must remove before he can compel the vendee to accept a title.

In such cases, it would be unjust to force an encumbered title upon a vendee, even if it were apparent that by the institution of a suit the incumbrance could be removed.—Griggs v. Woodruff et al., supra.

If, under an executory contract for the sale of lands, the vendor agrees to make to the vendee a fee simple title on the payment of the purchase money, and no fraud or mistake has intervened, for which a rescission of the contract would be decreed, he cannot be compelled to make the conveyance of title, until the purchase money is paid or tendered. But if, upon the tender of the purchase money, he refuses to receive it and make the conveyance, it will be considered an abandonment of the contract on his part, and the vendee may, if he think proper, also abandon it, and go into a court of chancery to have it rescinded, and on such rescission to recover back the money he had paid before such abandonment.

Let us apply these general rules to the case before us, and see what will be the result.

It appears from the pleadings and proof, that Robertson sold the lands in dispute to Smith, and represented to him at the time of the sale that he had a good title to all the parcels which compose the tract. On these representations Smith purchased, gave his notes for the purchase money, and took from Robertson a title bond, conditioned to make him a fee simple title to the lands enumerated in it, on the payment of the purchase money. This sale was made on the 17th day of February, 1838, and the last note for the purchase money became due and payable on the 1st day of January, 1841. It also appears that Robertson derives his title from one John Harden, through a mortgage, with power of sale, given by Harden to him, and that the sale from Robertson to Smith was made before any public sale had

been made under the mortgage. This mortgage does not, in terms, require a public sale, but invests Robertson, the mortgagee, on the happening of certain contingencies, which are here shown to have happened before the sale to Smith, with full power " to sell and make titles" to the lands conveyed by it, which are the same, with the exception of one tract, that are involved in this controversy. Robertson, then, had full power to dispose of these lands at the time he contracted with Smith, and his conveyance would be good against Harden, the mortgagor.— Smith v. Robertson, 11 A. R. 840.

Robertson admits in his answer that he represented to Smith, at the time of the sale to him, that he (Robertson) had a good title to the lands sold, and still insists that his title is such as he bound himself to convey, viz., a title in fee simple to all the lands sold.

It now becomes necessary to ascertain the title of Harden to the lands conveyed by him to Robertson, in order to see whether this representation was true or false, for it does not appear that, at the time of the sale to Smith, Robertson had any other title than that which he derived from Harden under the mortgage. With his answer, Robertson sets out the claim of title, with the patents and deeds, on which he relies to make good the truth of his representations to Smith. And here it may be as well to remark, that where one represents his title to be good, it is equivalent to saying that it is perfect, and unaffected by gaps in the claim of title under which he holds, or any defect or incumbrance whatever. In other words, it is equivalent to an assurance to the purchaser that, if he buys, he will acquire a title to the entire premises sold, to no part of which another has any just or legal claim, and one on which he may quietly repose.

The tract of land sold by Robertson to Smith consists of several parcels, or legal sub-divisions as they are generally described in the land offices of the United States. No boundaries are given of either the parcels, or the whole tract. In the title bond they are set out as being fractional section 12, township 18, of range 3 east in the Tuskaloosa Land District; the N. E. fraction of section 11; the S. W. ¼ of the S. E. ¼ of section 2; the N. W. ¼ of the S. W. ¼ of section 2; the N. W. ¼ of the S. E. ¼ of section 2; the S. E ¼ of the N. W. ¼ of

section 11 ; the N. E. ¼ of the N. W. ¼ of section 11 ; all in township 18, range 3 east, containing in all about three hundred and ten acres.

As to the first and second of these parcels, it is shown by the proof that they were patented to Everett B. Moore, who deposes that he sold and conveyed them to one Aaron Castleberry. These two parcels were conveyed to Harden more than a year after the sale from Robertson to Smith, by Stephen H. Castleberry and wife, by deed bearing date the 19th day of February, 1839. This deed was attested by two subscribing witnesses, and consequently would have been sufficient to pass the dower right of Mrs. Castleberry to the grantee, if the estate of her husband in the lands had been such as to entitle her to dower.— Clay's Dig. 174 § 10. In such case, there is no necessity for any private examination before a justice of the peace, to bar the wife's claim of dower. But it is nowhere shown that the title to these lands ever passed out of Aaron Castleberry to Stephen H. Castleberry, or any other person whatever. Where the title to land is once shown to have been in a particular individual, the law presumes it to remain in him, until it is shown to have passed out of him by some legal means ; and he who is in possession, and claims in opposition to such title, must show his conveyance, or protect his possession by adverse holding for the period prescribed in the statute of limitations, or such lapse of time that the law will raise a presumption that his holding is under a conveyance which has been lost or destroyed. Harden, however, can receive no aid either from the statute or the legal presumption, as the time during which the title and possession have been out of Moore, the patentee, is too short for either purpose.

These parcels of land contain about one hundred and eleven acres, or more than one third of the whole tract sold to Smith.

Under these circumstances, the only conclusion justified by the record, in relation to these two parcels, is, that the title is still in Aaron Castleberry, if living, or in his heirs or devisees, if dead.

The proof shows that Harden, when he made the mortgage under which Robertson claims, had a perfect title to only three out of the seven parcels which compose the tract sold by Robertson to Smith, and these amount in quantity to only one hun-

dred and twenty acres, and were encumbered at the time of the sale with Mrs. Harden's claim of dower.

She did not join her husband in the mortgage to Robertson, nor did she ever pretend to relinquish her dower to the lands conveyed by it, until the year 1841, three years after Robertson made the representations to Smith, which are charged in the bill to be false and fraudulent.

The remaining parcel, viz., the south-east fourth of the north-west fourth of section eleven, appears from the proof never to have been conveyed to Harden at all. The only deed, or other muniment of title to this tract, found in the record, is a deed from Henry B. Robertson and wife, to Henry W. Robertson, bearing date the 30th of December, 1844, five years after the sale by Robertson to Smith. If the proof in the record is all that exists in relation to the title of this parcel of land, the paramount title still remains in the United States.

From this review of the proof in respect to the titles to the several parcels of land composing the tract sold by Robertson to Smith, it appears, that the former had not a perfect title to a single acre when he made the sale, and at the time of the hearing in this case in the court below, he had not disencumbered or perfected his title to but little over one half the tract sold to Smith.

In connection with this review of title, tedious as it is, we must still advert to the testimony of Enoch Floyd, a witness for the complainant, before we can rightly characterize the conduct and representations of Robertson, made to Smith at the time of the sale, which he admits in his answer, and repeatedly insists they are true. This witness says, that Robertson came to his house in the early part of the year 1838, and told him that he had sold the land he got of Harden to John Smith, the complainant, and showed witness the notes he had taken, and said he had given his bond to make a deed to Smith when the notes were paid. Witness then asked Robertson, if he was not afraid there would be some difficulty in making a good title, as from what he had heard there were some defects in the titles to some portions of the lands. Robertson replied, that, if he had the luck to get all the money for which the personal property and lands had sold, he would pay off all Harden's debts, and have the price of the land left for his (Harden's) wife and chil-

dren; and as to the title, he cared nothing about it, so he got it off of his hands. On witness further suggesting that Harden had showed witness his title, which was an old deed assigned to Harden by some other person, Robertson replied, if witness would keep his mouth shut about it, it would save him (Robertson) some trouble. At the time of this conversation, the witness lived on the land in dispute.

When it is seen, (as it plainly appears from what is proved in respect to the titles of these lands,) that Robertson had not a perfect or unencumbered title to any part of them at the time he sold to Smith, and that, therefore, his representations that he had were false; his anxiety that his tenant should not reveal the defects of the title, and his reckless declaration that he cared nothing about the title, so he could get the purchase money, and this occurring immediately after the sale, the mind is irresistibly impressed with the belief that he knew the defects of title, or at least some of them, and that his representations are not only false, but were made with the intention to defraud his vendee.

While we hold that fraud should never be presumed, yet it is perfectly clear it may be inferred, when the facts of the case will justify it, and the whole conduct of the party to whom it is imputed, in relation to the matter out of which it arises, may be looked to for this purpose; and when this rule is applied to the case under consideration, it is clear to us that the representations of Robertson to Smith, made before and at the time of the sale of the lands, were made to defraud him; and for this reason a court of equity should, when applied to, rescind the contract thus procured, and restore to the defrauded purchaser whatever sum he has paid on account of such an agreement.

2. Conceding, however, that the representations of Robertson are not fraudulent, but were founded in mistake alone, in which Smith also participated, and that at the time the contract was made both parties believed the title to be good and unencumbered, and that their agreement was predicated upon this belief, it does not vary the result of this case. A mistake of this character, if the party who has been injured by it seeks a rescission of the contract within a reasonable time after he discovers it, and delivers, or offers to deliver, the possession of the premises to the vendor, and abandons them himself, will fully

justify a court of equity in relieving the vendee, if the vendor insists upon his contract, and refuses to rescind.

It is charged in the bill, and admitted in the answer, that Smith, after paying a large portion of the purchase money, offered to rescind the contract, but that Robertson refused to do so. It is also alleged in the bill, that the offer to rescind was accompanied by a tender of possession, and immediately followed by an abandonment of the premises by Smith. This allegation is expressly denied by the answer, and the tender of the possession, as alleged, is proved by the testimony · of only one witness, while the abandonment of the possession in the year 1843 is fully established by several witnesses.

It does not appear from the record, that Smith suspected the validity of Robertson's title, until sometime in the year 1843, when the latter advertised the lands for sale, under the mortgage made to him by Harden ; and one witness deposes, that, on the day of the sale under this advertisement, Smith, in his presence, offered to rescind the contract, and surrender the possession of the lands to Robertson, but the latter refused both offers.

It is contended by Robertson's counsel, that this proof can not be allowed to outweigh the positive denial of the answer ; that in such case the law requires two witnesses, or one witness with strong corroborating circumstances ; and that the circumstances required do not exist here. While it is fully conceded that, in ordinary cases, the rule of evidence is as it is contended for, yet there is another rule, which, in our opinion, is much more applicable to this answer, than the general one above stated. It is this : that answer which is shown to be false in one material part must be discredited altogether, and is only regarded as a mere pleading. This rule is in strict analogy to the general rule with regard to witnesses. The practice in chancery views the sworn answer of the defendant, when unassailed, in the double aspect of pleading and proof.

The assertion in the answer of Robertson, more than once repeated, that he had a perfect title to the lands in dispute, and that no one else had any title at the time he sold to Smith, is shown to be false by the facts and circumstances herein before stated. We will now examine whether he knew it to be so when he swore to his answer, or whether the falsehood arose out of an

honest mistake as to the character of his title. The sale to Smith was made on the 17th February, 1838, and his answer was verified on the 18th July, 1848. Between these two periods the defendant procured two conveyances, each of which, if rightly made, was indispensably necessary to the perfection of his title. One of these is that of Mrs. Harden, purporting to relinquish her dower in the lands to Robertson; and the other is the deed of Henry B. Robertson and wife to him, purporting to convey the fee simple title to one parcel of the lands sold to Smith, and to which it does not appear that Harden ever had any title whatever. It is highly improbable, if not actually impossible to suppose that Robertson did not know when he took these deeds, that defects existed in his title as it formerly stood, when he sold to Smith, and that they were necessary to supply them; and yet, seven years after the making of one of these deeds, and four years after he procured the other, he positively asserts in his answer that, when he sold to Smith, the title to the land was in himself. His answer in this particular is discredited by the exhibits to his bill, and the whole of it must be regarded as a mere pleading. Having lost its character as testimony, a single witness is sufficient to make good an allegation in the bill, notwithstanding it is expressly denied by the answer.

It is then proved that Smith, as soon as he was induced by the conduct of Robertson to suspect the goodness of the title of his vendor, offered to rescind the contract, tendered him the possession of land, and on his refusal to receive it abandoned it himself. This is all that he is required to do, if his contract was made under a mistake of the facts in respect to Robertson's title, and he afterwards discovered that that title was, in truth, fatally defective. In such cases, the right of the vendee to a rescission of his contract, is not made to depend upon the payment of the purchase money, or even a tender of it, but upon his promptness in seeking a rescission, and placing or offering to place the vendor *in statu quo*. If the latter refuses the offer, or fails to accept it when made to him, this can neither hinder nor delay the vendee's right to abandon the possession and go into equity for relief against the consequences of such mistake. Nor does the solvency or insolvency of the vendor exercise the slightest influence over his right to relief in equity. In this case, it was not even necessary for the vendee to tender the pos-

session to his vendor, as it is clear from the answer that it would not have been accepted.—Elliott v. Boaz, 9 A. R. 772.

3. A third ground of relief, as set forth in this bill, is, that before it was exhibited the complainant tendered to the defendant the balance of the purchase money due, with a deed for the premises in dispute, drawn in conformity with the condition of the bond for titles, and that the defendant refused to accept the one, or to execute the other. It is not, however, necessary to consider this part of the case, and the conflicting proof in relation to it, as we have already seen that the decree of the Chancellor cannot be sustained, and the two points already considered are finally decisive of the case. The decision of this branch of the case either way, cannot vary the conclusion we have attained, or in the slightest degree affect the result to the parties. The tender of the money was wholly unnecessary, and whether it was made or not is unimportant.

The cross bill of Robertson is filed solely for the purpose of enforcing his vendor's lien for the residue of the purchase money, and as we have seen the contract of sale should be rescinded, it is without equity, and must be dismissed.

In the accounting between the parties, the defendant should be allowed a credit for the value of the lands, by way of rent, during the time Smith occupied them.

The decree of the Chancellor dismissing the original bill must be reversed, and the cause remanded as to that bill, that an account of the purchase money paid by Smith, with interest thereon, and of the rents due from him to Robertson, may be taken, and a moneyed decree rendered in favor of the complainant for whatever balance may be found due him.

A decree must be here rendered rescinding the contract for the sale of the lands described in the bill of Smith, and dismissing the cross bill of Robertson, who must pay all cost.

CHILTON, C. J., not sitting.