## TRIPPE *vs.* TRIPPE.

[BILL IN EQUITY FOR PARTITION AND ACCOUNT BETWEEN TENANTS IN COMMON.]

1. *Relief not granted under deed obtained through misrepresentation and mistake.*—A deed, executed by a married woman, simultaneously with the execution by her husband of his last will and testament; purporting to be made in consideration of her love and affection for the two grantees, who were her husband's children by a former marriage, and of the settlement and provision made for her by her husband's will; conveying to the children each an equal interest with herself in her separate estate secured by ante-nuptial contract, and reserving the right, as a consideration therefor, to become an equal heir with them in her husband's estate, with which her property is declared thereby to be incorporated,—will not be sustained in equity, at the suit of the grantees, against the heirs and administrator of the grantor, where the provisions of the will, the confidence which the wife reposed in her husband, and other circumstances in proof, show that it was executed through mistake on the part of the wife, and misrepresentation on the part of the husband, as to the amount of his debts; in that the deed and will together appear to have constituted a plan, by which it was contemplated that, without a sale of any of the property, the joint plantation should continue to be kept up and worked with the slaves of the husband and wife, and the wife and children be maintained out of its proceeds, while the husband's estate was in fact so much embarrassed as to leave nothing for distribution after the payment of debts.

2. *What defense may be set up by answer without cross-bill.*—Under a bill for partition and account, filed by two tenants in common against the heirs and administrator of a deceased tenant, who executed the deed under which plaintiffs claim, the defense may be set up by answer, without filing a cross-bill, that the deed was executed through mistake and misrepresentation as to a material fact, and therefore ought not to be sustained in equity.

APPEAL from the Chancery Court of Perry.

Heard before the Hon. JAMES B. CLARK.

THE material facts shown by the record are these :—

In September, 1840, Dr. Henry Trippe and Mary A. Harris, in contemplation of marriage, entered into an ante-nuptial contract, by which the property, both real and personal, of the said Mary, was secured to her sole and separate use. The marriage was soon afterwards solemnized; and the parties lived together as man and wife, until the death of the said Henry. At the time of the marriage, Dr. Trippe

had two children by a former marriage living. The real estate belonging to Mrs. Harris, and certain lands belonging to Dr. Trippe, formed the plantation on which they lived during the coverture, and which was worked by their slaves in common. On the 18th October, 1843, Dr. Trippe, then on his death-bed, executed his last will and testament, which was duly admitted to probate soon after his death, and which contained the following provisions :—

" 1st. I hereby constitute and appoint my brother, Leland Trippe, and my wife, Mary A. Trippe, my executors, to do and perform [the] several matters and things hereinafter mentioned.—2d. It is my will and desire, that all my personal property, including stock, &c., of every description, be retained upon the farm where I now reside, and farming interest carried on as it has heretofore been. I desire that none of the negroes be sold, but that the farm be carried on and managed by my executors.—3d. I will that the proceeds of my crop be first applied to the payment of every legal and just debt which exists against me, and, after they are all paid, that the money arising from that source, under the direction of my executors, be applied to the improvement of the place upon which I reside, the education of my children, the comfort and happiness of my wife, and the purchase of negroes for the farm.—5th. I will that the raising, education, and training of my son, William F. Trippe, be more particularly under the direction and control of my brother, Leland Trippe ; and let my daughter, Martha F. Trippe, be exclusively raised and educated under the control of my wife, Mary A. Trippe. 6th. I will that all my real estate lying in Marengo county, to-wit, seventy-eight acres of land lying in the north-west quarter of section twenty-one, township fifteen, range five ; and the south-west half of the north-west quarter of same section, township and range, containing eighty acres; and every and all of real estate of every description or nature, or any or all interest that [I] may have in any real estate or town property in Dayton, or elsewhere in said county—be sold by my executors, at public or private sale as they may deem most proper, and the proceeds applied to the improvement of the tract of land upon which I now reside.—7th. I

hereby will and desire, that my executors pay, annually, for the term of three years, the sum of $150 to the payment of expenses incurred in sustaining, my beloved nephew, John Henry Stone, in the acquirement of his education ; said term of three years to be computed from 1st January, 1844.—8th. I will that my servant Lucy be the exclusive property of my daughter, Martha F. Trippe, and be under the control of my wife, Mary A. Trippe, without charge to her, till my daughter becomes of age or marries.—9th. I will that, whenever my son, William F., comes of age, or my daughter, Martha F., comes of age or marries, they apply to my executors, and obtain one third, viz., one third each, of the real and personal property which may be in the hands of my executors ; the other third to be the independent property of my wife.    Witness my hand and seal," &c.

On the same day this will was executed, Mrs. Trippe executed to the said William F. and Martha F., the children of her said husband, a deed which is in these words :—

"The State of Alabama, ⎱    This indenture, made this 18th
          Perry County.  ⎰ day of October, 1843, between Mary A. Trippe, of the first part, and Martha F. Trippe and William F. Trippe, of the second part, *witnesseth*, that in and for the consideration of the love and affection which I bear to the said parties of the second part, and in and for the consideration of a certain settlement and provision made for me this day by my husband, Henry Trippe, I hereby, so far as in me lies, give, grant, bequeath and settle, on said parties of the second part, all manner of property which is or was mine, by separate right, at and before my marriage with my beloved husband, Henry Trippe.   Said property, both real and personal, is hereby fully and freely incorporated with his estate ; and all manner of contracts, settlements, or legal hinderances to the attainment of that end, is hereby waived ; I reserving the right, as a consideration therefor, to become an equal heir in the estate of my husband with my husband's children, named parties of the second part, as is provided for in the will and testament of my husband, of even date with this.   Witness my hand and seal," &c.

Dr. Trippe died on the 30th October, 1843, and his will was duly admitted to probate; but it appearing soon afterwards that his estate was very much involved in debt, and that it would probably be insolvent, Mrs. Trippe dissented from the will within the time allowed by the statute. The estate was declared insolvent, and, at the time of the hearing of this cause, was in progress of settlement as an insolvent estate; but there is an agreement of counsel in the record, as to the facts of the case, to the effect that it will probably pay all its debts. In 1845 Mrs. Trippe died, intestate; and letters of administration on her estate were granted to J. R. John, who thereupon took possession of the property which composed her separate estate. In April, 1851, William F. and Martha F. Trippe filed a bill against the administrator, heirs-at-law and distributees of Mrs. Trippe, asking a partition and account of the property which the complainants claimed under the deed above set out. The defendants answered, alleging, in defense, that the deed was never delivered by the grantor, that it was procured by misrepresentations and undue influence, that it was inoperative on account of the grantor's mental incapacity at the time it was executed, and that it was not sustained by a sufficient consideration. The view here taken of the case renders it unnecessary to state the evidence bearing on these points, or to notice the other points which the record presents. On final hearing, the chancellor rendered a decree for the complainants, and his decree is now assigned as error.

Wm. M. Brooks, Wm. M. Byrd, and J. R. John, for the appellants, made the following (with other) points :—1. There was no delivery of the deed, either in law or in fact.—Roosevelt v. Carow, 6 Barbour, 190 ; Baldwin v. Maultsby, 5 Iredell's Law R. 505 ; Clayton v. Liverman, 4 Dev. & Bat. 238; Hughes v. Easton, 4 J. J. Mar. 572 ; Moore v. Collins, 4 Dev. 384 ; Kirk v. Turner, 1 Dev. Eq. 14 ; Uniacke v. Giles, 2 Molloy, 257 ; 20 Wendell, 44 ; Boney v. Hollingsworth, 23 Ala. 690 ; Gamble v. Gamble, 11 Ala. 974 ; Frisby v. McCarty ,1 Stew. & P. 56.

2. The deed, if executed, was procured by fraud and undue influence, and therefore will not be upheld. The relation

existing between husband and wife implies confidence, trust, and influence ; and the proof shows that, in this case, this confidence and influence existed- in a greater degree than ordinary. The proof also shows that Mrs. Trippe was ignorant of the extent of her husband's indebtedness, and that he misrepresented it to her. From the magnificent provisions of her husband's will, she was induced to believe that she would receive a valuable and adequate consideration for the property mentioned in the deed ; and the deed itself purports to be made, partly, in consideration of this provision for her. It was the duty of the husband, under these circumstances, to make a full and true·disclosure of his real condition ; and his failure to do this, even if there had been no positive misrepresentation, amounts to a fraud on her.—Boney v. Hollingsworth, 23 Ala. 690 ; Huguenin v. Baseley, 14 Vesey, 294 ; Leading Cases in Equity, vol. 2, pp. 461–9 ; 10 Ohio, 256 ; 1 Green's (N. J.) Ch. 123 ; 9 B. Monroe, 28 ; 2 Barb. Ch. 260.

3. But, even if there was no fraud, and both parties acted under a mutual mistake, equity will equally withhold its aid. 1 Story's Equity, §§ 161–2, 172, 192–3, 206, 218, 222, 234–6, 243–6 ; Boney v. Hollingsworth, 23 Ala. 690.

4. (In reply.) There was no necessity for a cross-bill, since the defendants do not ask any relief against the deed.— Story's Eq. Pleading, §§ 391, 391 a ; German v. Machin, 6 Paige, 288.

A. R. MANNING and I. W. GARROTT, contra.—1. As to the question of delivery, see the following cases: Cro. Eliz. 7 ; McClure v. Colclough, 17 Ala. 89 ; Farrar, v. Bridges, 5 Humph. 412 ; Harris v. Saunders, 2 Strob. Eq. 370, note ; Doe ex dem. Garnons v. Knight, 5 Barn. & Cress. 671, or 12 E. C. L. 351 ; Souverbye v. Arden, 1 Johns. Ch. 251 ; Byers v. McClanahan, 6 Gill & J. 250 ; Clavering v. Clavering, 2 Vernon, 473 ; McLean v. Button, 19 Barbour, 150; 9 Sm. & Mar. 387 ; 15 Wendell, 545 ; 6 Simons, 31.

2. There is no proof in the record that the deed was procured by importunity or undue influence on the part of Dr. Trippe ; but, on the contrary, in the languge of the chancellor, "instead of being importuned, she importuned her husband,

to have their property thrown together in the manner attempted by the will and deed as executed."—1 Story's Equity, § 239 ; Willard's Equity, 171. That undue influence is not to be presumed from the mere relation of the parties, see Jenkins v. Pye, 12 Peters, 253–4 ; Imlay v. Huntington, 2 Conn. 146 ; Merriam v. Harsen, 4 Edw. Ch. 81.

3. Dr. Trippe did not misrepresent nor conceal from his wife his indebtedness. There was *uberrima fides* on his part. Several witnesses testify to the fact, that he said, in her presence, that he was largely indebted ; and the very fact that, at such a time, she insisted on dividing her property with his children, shows that she knew they would need to be provided for. Doubtless Dr. Trippe thought, that his practice, which was worth $3,000 a-year, and two or three "good crops," made with the joint hands and property of himself and wife, would pay his debts. And this was a reasonable supposition ; for, notwithstanding the expenses of the administration, the heavy litigation in which the estate has been involved, the loss of one half of the crops, which the administrator of Mrs. Trippe recovered from the estate, and the great depression in prices in 1845, the debts have all been paid.

4. But, even if Mrs. Trippe was under the impression that her husband's debts were less than they proved to be, this alone does not authorize the setting aside of her deed. "The misrepresentation must be of something material ; constituting an inducement, or motive to the act."—1 Story's Equity, § 195. No fact is more apparent from the evidence, than that the deed of Mrs. Trippe was her own free, spontaneous, and generous act ; and that her chief motive in making it, was to provide, beyond accident or casualty, against that very destitution to which, by reason of the large indebtedness of their father, the grantees were about to be reduced. It was her clear intention, that they should share with her in the joint property of herself and husband, as equally as if the antenuptial contract had never been made. This was the motive which induced her to dissent from the will, when it was represented to her that all the property would be swept away by his debts ; and it is corroborated by her character, con-

duct and declarations, from the time of her marriage to her death.

5. The deed cannot be set aside, or treated as null and void, except upon a bill or cross-bill filed for that purpose.— Carter v. Palmer, 8 Clark & F. 657–68 ; Kerr v. Lord Dungannon, 1 Dr. & War. 569, cited in Chitty's Equity Digest, vol. 3, p. 2051, § 9 ; Eddleston v. Collins, 17 English Law and Equity, 300.

WALKER, J.—Chancery will not sustain a conveyance made through a mistake as to a matter which constitutes a material inducement to the act, if that mistake resulted from the misrepresentation of the other contracting party, though innocently made, and it may be fairly presumed from the relation of the parties and the subject of the misrepresentation that the party making the conveyance trusted to the representation. This proposition of law, which must control the decision of this case, is asserted in the opinion of Judge Goldthwaite, in Boney v. Hollingsworth, 23 Ala. 697, and is defensible upon principle and authority, perhaps even in a less guarded form than that in which it is stated. Mistake itself is an ancient and well-established head of jurisdiction, and courts of chancery have always relieved against mistakes, when they were as to facts constituting a material ingredient in the contract, and not discoverable by the exercise of such diligence and vigilance as the law exacts. Courts of chancery relieve, also, against misrepresentations as to material matters, innocently made ; for the misrepresentation is not the less injurious because so made, and " it operates as a surprise and imposition."—Boney v. Hollingsworth, *supra ;* Smith v. Robertson, 23 Ala. 312 ; Kennedy v. Kennedy, 2 Ala. 571 ; 1 Story's Eq. §§ 140, 141, 193 ; Willard's Equity, 150 ; Murray v. Palmer, 2 Sch. & Lef. 474 ; Evans v. Lewellen, 1 Cox's Ch. R. 333 ; Hitchcock v. Giddings, 4 Price, 135, top 55 ; McCarthy v. Decaix, 2 Russ. & Mylne, 614, (13 Eng. Ch. R. 192).

To ascertain whether the conveyance on which the title to complainants is predicated must be condemned under the principles of law above laid down, it is necessary to examine the facts in the case. The complainants are the only children

of the deceased husband of Mrs. Trippe, the defendant's intestate, who was childless. Mrs. Trippe had a separate estate secured by an ante-nuptial contract. She was fondly attached to Dr. Trippe, her husband, and his two children, the fruit of a former marriage ; and appears to have possessed for him that affectionate devotion and trustful confidence, which would place her completely under his control. Dr. Trippe had, at the time of his death, a considerable estate, consisting principally of a plantation and slaves. During his last illness, and but a few days before his death, a will was made by him ; and simultaneously, his wife, the defendant's intestate, made the conveyance upon which the complainants base their title. By the will of Dr. Trippe, his real and personal property, after the deduction of two specific legacies, is bequeathed, in equal parts, to his wife and two children. By the conveyance of Mrs. Trippe, cotemporaneously made, the two children of Dr. Trippe are, according to the decision of this court in Trippe v. John, 15 Ala. 117, vested with an equal interest with Mrs. Trippe in the property which composed her separate estate. This conveyance purports on its face to have been made in consideration of love and affection, and of the provision and settlement made for Mrs. Trippe by the will of her husband ; and it says that Mrs. Trippe's separate estate is thereby incorporated with Dr. Trippe's estate, Mrs. Trippe reserving a right, as a consideration therefor, " to become an equal heir in the estate of her husband, with her husband's children." The lands possessed by Dr. Trippe, and those belonging to Mrs. Trippe's separate estate, together composed one undivided plantation, upon which he resided with his family ; and his and his wife's slaves were worked in common, at the time of his death, and afterwards, until the death of Mrs. Trippe. The will of Dr. Trippe directs that the plantation upon which he resided should be carried on as it had theretofore been carried on, and that the crops should be appropriated to the payment of debts,—then to the improvement of the place, the education of the children, and the comfort and happiness of his wife.

It is manifest from what has already been said upon the authority of the record, that the conveyance by Mrs. Trippe, and the will of her husband, are parts of one and the same

Trippe v. Trippe.

transaction, designed to carry out a general scheme, or plan, by which the family relation should be kept up between the wife and children of Dr. Trippe,—that they should be maintained in that relation from the common plantation ; that the separate estate of Mrs. Trippe, and the estate of Dr. Trippe, should become a common property, incorporated together, and that Mrs. Trippe and the children of Dr. Trippe should have a community and equality of interest in the property. This scheme involves the idea, and rests upon the supposition as its corner stone, that Dr. Trippe's property would unite in the common stock, and would not be absorbed in the payment of its debts. The accomplishment of the plan, founded in the mutual affection and confidence of Dr. and Mrs. Trippe, and in the common desire to provide, by an arrangement just and fair in all its parts, for the competency, comfort, and happiness of Mrs. Trippe and the two children, was practicable and feasible only upon the hypothesis of the solvency of the estate of Dr. Trippe. It is clear beyond doubt, that both Dr. Trippe and his wife entered into the arrangement with the belief that the estate was solvent, and that its debts would be paid by the sale of the crops produced. It was not within the contemplation of either of them, that the estate would be insolvent on account of the litigation in which it would be involved, or the debts against it, or the two combined. Unless we asperse the memory of Dr. Trippe, by attributing to him a deliberate purpose to defraud his wife, who loved him and trusted in him with child-like confidence, we must conclude that the entire arrangement was the result of a mistake as to the solvency of the estate, which is the pillar upon which the whole arrangement rests. By the insolvency of her husband's estate, or, at least, the absorption of much the greater portion of it by the payment of debts, all the benefit which she was to derive from the arrangement has been swept away ; and it is now demonstrated, that the supposition on which the arrangement was entered into, was a mere delusion.

The question arises, whether she shall be bound by her obligations, which composed a part of that general arrangement. One of the inducements to the making of the conveyance by Mrs. Trippe, was her desire to benefit the children

of her husband ; but that benefit was not intended to be wrought out merely by giving to them two thirds of her property. A gift could have been made at any time. The children were of tender years, and were not in need of specific property. The purpose of benefiting the children through the agency of her property, could have been better accomplished by retaining the title in her hands, and educating and maintaining them with the profits, until increase of years might bring together a want of the property and a capacity to manage it. It was through the arrangement by which a union of the two estates—a community of interest in and enjoyment of it—and the preservation of the family relation, were provided for, that it was intended to benefit the children. The desire to provide for the children, by a gift from Mrs. Trippe, was not the inducement to the conveyance. 'The inducement was to provide for the children by the compound arrangement of which the gift was only one part. But the benefit of the children was not the only object had in view. Dr. Trippe was not so unjust as to forget his wife ; nor was she so unmindful of herself as to totally neglect her own interests. Dr. Trippe directs, that the crops produced on the plantation shall be applied to its improvement, the education of the children, and the comfort and happiness of Mrs. Trippe ; and gives to her an equal interest with the complainants in all his property not specifically bequeathed. The consideration clause of the conveyance by Mrs. Trippe shows that it was made in consideration of love and affection for the children, and *of the settlement and provision made for her in her husband's will.*

Again, the conveyance by Mrs. Trippe says, that her property is incorporated with her husband's estate, she " *reserving the right, as a consideration therefor, to become an equal heir in the estate of her husband with his children.*" So much importance is attached to the interest of Mrs. Trippe under the arrangement, that it is not only provided for in the will, but Mrs. Trippe carefully reserves the right to share equally with complainants the property of her husband, and in effect asserts that as a consideration upon which her conveyance is made. The promise by the will of Dr. Trippe to his wife, of a provision for her " comfort and happiness" out of the crops

of the plantation, and of an absolute title to one third of his property, was not only an inducement to her conveyance, but it·was one to which prominence was given, and upon which stress was laid in the conveyance itself.

Neither of the controlling purposes of Mrs. Trippe and her husband can be accomplished, if Dr. Trippe's estate was so embarrassed with debts, *that its sale was necessary*. The arrangement would never have been made, had the extent to which the estate was indebted been known. As to that matter, there was a mistake on the part of Mrs. Trippe, and also, in our judgment, on the part of Dr. Trippe ; for we do not ·find··in the case any authority for imputing to him a fraudulent design.

Without looking into any other testimony, we conclude from·the will itself, that Mrs. Trippe was misled by her husband's representations as to the amount of his debts. That instrument directs that none of the personal property shall be sold ; that the plantation shall be carried on ; that the proceeds of the *testator's* " *crôps* " shall be first appropriated to the payment of the debts ; that the money arising from that source, after the debts are paid, ·shall be appropriated to the improvement of the place, the education of the children, " the comfort and happiness " of Mrs. Trippe, and the purchase of the negroes ; that certain lands, distinct from the plantation on which the testator resided, be sold, and the proceeds appropriated to the tract of land of his residence ; that four hundred and fifty dollars be paid, in three installments of one hundred and fifty dollars each, to the testator's nephew ; and that a certain slave be given to the testator's daughter, as her exclusive property. These provisions of Dr. Trippe's will, made in Mrs. Trippe's presence, amount to an assertion, solemn and impressive, that the estate was not so indebted as to render a sale of it a probable contingency. Upon the hypothesis of the correctness of that assertion, the whole arrangement was based, and to its incorrectness a failure in the accomplishment of the purposes of the parties followed as a sequence. It is incredible that Mrs. Trippe, uninfluenced by the representations in the will of her husband, would have ·made the conveyance she did. We are told by some of the witnesses, that she took a lively

interest in the preparation of the will ; and indeed the testimony conduces to show that a former will was destroyed, and this one prepared, at the instance of Mrs. Trippe. Mrs. Trippe forbore to make her conveyance, until the latter will was made ; thus showing that it was induced by the provisions of the will, which dissolve into nothing without a verification of the assertions characterizing it. It needs no argument to sustain the presumption, that Mrs. Trippe, who is shown to have loved and trusted her husband almost beyond her sex, confided in, and was influenced by, these representations of her husband. If Dr. Trippe, finding his wife solicitous for the making of such a will as was drawn, and inviting him to an arrangement based upon a delusion as to the amount of his debts, had known and stated the facts, her conveyance would never have been made. He does not dispel, but confirms her delusion by the words of his will. In those words she trusted with undoubting confidence ; and without them she did not, and, in our judgment, never would have made the conveyance.

Our conclusion from the protracted argument which we have made, is, that the conveyance upon which complainants rely as proof of their title falls within the principle which we laid down at the outset of this opinion, and that therefore it would be rescinded upon a suitable application.

The conveyance of Mrs. Trippe being one which a court of chancery would rescind, the complainants, though armed with the legal title, have not as against the administrator of Mrs. Trippe's estate, an equitable right to recover the two thirds of the property conveyed to them. Where the answer avers, and the proof establishes, the facts which entitle Mrs. Trippe's representative to a rescission of the contract, the complainants' right of recovery in a court of equity is negatived. The court of chancery cannot give relief upon a naked legal title, which a court of chancery would set aside as inequitable. If the defendant sought any relief, a cross-bill would be an indispensable pre-requisite to its attainment. But here no relief is sought, and none is needed. Mrs. Trippe had, under the deed, an interest of one third in the property ; and the possession of the property was with Mrs. Trippe in her lifetime, and has been with her representative

since her death. The exigencies of the defendant's position seem, therefore, to require only a defeat of a recovery by complainants. Where no relief is sought, and no discovery, the rule is that the defense may be made by answer, except in those cases where a plea is necessary. A cross-bill would certainly have been proper, for under that a decree for the cancellation of the conveyance might have been obtained.

As an authority for the position, that a cross-bill was necessary, we are cited by the appellees' counsel to the case of Carter v. Palmer, 8 Clark & Finn. 657, and of Eddleston v. Collins, 17 Eng. Law and Eq. R. 296. The former of those two cases is accompanied by a brief note of the observations made by Lord Cottenham, when the case was previously before the House of Lords, on a motion to remand the cause. The defense in that case was, that the complainant, being the professional agent of the defendant, had purchased at an under price an incumbrance upon the estate of the latter. The bill had been dismissed ; and Lord Cottenham, in the remarks which he submitted, said that the bill ought not to have been dismissed, that the defendant was bound to pay to the complainant the price of the incumbrance, and that the defendant ought to file a cross-bill. The report is meagre, and does not state the reasons for the opinion expressed. Although it is possible, that the propriety of a cross-bill may have been concluded from the fact that it was incumbent upon the defendant to tender the price as the condition upon which he would be relieved, we are not sure that the authority can be reconciled with the position taken by us. In the other case cited, one of the lord-justices (the other saying nothing on the point) expressed the opinion, that a respondent could not by answer impeach the complainant's title ; but the lord-chancellor, conceding that the filing of a cross-bill would have been "the more strict course," held that the defense could be made by answer. The counsel for the appellees also refers us to the syllabus of a decision in Chitty's Equity Digest, p. 2051, § 9, which says that, where a defendant in his answer sets up as a defense to the plaintiff's case that the original grant, in relation to which the plaintiff has come into a court of equity, ought not to have been executed, in general he will not be allowed to impeach the grant in such

42

a way, but must file a cross-bill. In this case the court was of opinion the cross-bill was not necessary. We have no access to the case referred to in the digest, and are unable to determine whether it has any application to the question under consideration. The above are the only authorities cited in proof of the necessity of a cross-bill. We have not found any others tending to sustain the position. The text books seem to concur in confining the necessity of a cross-bill to cases where relief or discovery is sought, or where the purpose of a plea *puis darrien continuance* is to be accomplished.—3 Daniell's Ch. Pleading, pp. 1742, 1743 ; Cooper's Equity Pleading, 85–86 ; Mitford's Equity Pleading, 81–82; Chitty on Pleading. Aside from cases of discovery, and defenses in the nature of a plea *darrien continuance*, the elementary works recognize the necessity for relief as the test of the necessity of a cross-bill. The American authorities fully maintain the same rule. In German v. Machin, 6 Paige, 288, and Cox v. Smith, 4 Johns. Ch. 271, it is decided, that a bill for partition may be defeated by an answer setting up an equitable title in the defendant. See, also, Bellamee v. Underwood, 3 Scam. 46 ; McConnell v. Hobson, 2 Gilman, 640 ; Barb. & Har. Dig. 433.

Although the precise question arising in this case has not been decided in this court, yet the principle which is applicable and must control its decision is well settled.—Goodwin v. McGehee, 15 Ala. 232 ; Cullum v. Erwin, 4 Ala. 452 ; Tison v. Tison, 14 Ga. 167.

In the argument of this case it was insisted, that the conveyance of Mrs. Trippe had never been delivered ; that it was procured by the exercise of undue influence, and was fraudulent. It was also argued, that the mistake alone, in the absence of any misrepresentations, was of itself sufficient to avoid the conveyance. There were, in addition to those questions, several questions raised upon the evidence. We forbear to consider any of those questions, because the points decided are conclusive of the case.

The decree of the court below must be reversed, and a decree must be here rendered, dismissing the bill, and imposing the costs of this court and the court below upon the next friend of appellees.